**SOUTHWESTERN LIFE INSURANCE COMPANY, Appellant,**

v.

**Jose MONTEMAYOR, Commissioner of Insurance; Carole Keeton Rylander, Comptroller of Public Accounts of the State of Texas; John Cornyn, Attorney General of the State of Texas, Appellees.**

No. 03–99–00719–CV.

Court of Appeals of Texas, Austin.

July 13, 2000.

Released for Publication Aug. 31, 2000.

David H. Gilliland, Clark, Thomas & Winters, P.C., Austin, for Appellant.

Blake A. Hawthorne, Asst. Atty. Gen., Austin, for Appellees.

Before Chief Justice ABOUSSIE, Justices KIDD and B.A. SMITH.

BEA ANN SMITH, Justice.

Appellant Southwestern Life Insurance Company (Southwestern) appeals from a district court order granting summary judgment in favor of appellees Jose Montemayor, Commissioner of Insurance; Carole Keeton Rylander, Comptroller of Public Accounts of the State of Texas; and John Cornyn, Attorney General of the State of Texas (collectively the State).[1] Southwestern brought suit to recover insurance premium taxes paid under protest. *See* Tex. Gov't Code Ann. §§ 403.202–.205, .211 (West 1998). The district court granted summary judgment for the State. Southwestern appeals the judgment, claiming it is entitled to a tax credit for examination and valuation fees paid in 1989, in excess of its premium tax liability for that year, to be applied against its 1990 premium tax liability. We hold that the unused credit may not be carried forward and will affirm the trial court's judgment in favor of the State.

### Factual and Procedural Background

Article 4.11 of the Texas Insurance Code requires every life, health, and accident insurance company to pay a yearly tax on premiums. *See* Tex. Ins.Code Ann. art 4.11, § 1 (West Supp.2000). Section 8 of the article creates a tax credit that allows an insurance carrier to offset its premium tax liability by the amount of examination and valuation fees it pays to the Texas Department of Insurance. *See id.* § 8.

---

1. Southwestern originally sued the former Commissioner and members of the Texas Board of Insurance, the former Attorney General, and the former Treasurer of the State of Texas. The current holders of the offices of Attorney General and Commissioner of Insurance have been substituted as the correct parties to the proceeding. *See* Tex.R.App. P.

7.2(a). Because the position of State Treasurer was abolished effective September 1, 1996, and its powers and duties were transferred to the Comptroller of Public Accounts, the Comptroller has been substituted for the State Treasurer as the correct party to this proceeding. *See* Tex. Gov't Code Ann. § 404.0011 (West 1998).

Southwestern's original 1989 tax return shows that its premium tax liability for that year was $743,684.98; its accrued premium tax credits, however, totaled $927,-404.06. Of these credits, $885,375.06 were for examination and valuation fees that Southwestern paid to the Texas Department of Insurance that year. The 1989 State of Texas Annual Tax Return instructs the filing insurance carrier to compute its net premium tax liability by subtracting its credits from its gross premium tax liability for that year. According to the return, if this amount is negative, the filing carrier must enter zero as its net premium tax due. Southwestern did not enter zero but calculated a negative premium tax of $183,719.08. Southwestern then applied this negative amount as a credit against its 1990 premium tax liability.

Following an audit of Southwestern's 1990 tax return, the State determined that Southwestern could not apply the unused portion of its 1989 credits to offset its 1990 premium tax liability; the State demanded back payment of $183,719.08 plus $47,398.00 in penalty and interest. Southwestern paid this amount under protest and filed suit in district court to recover the payment. *See* Tex. Gov't Code Ann. §§ 403.202–.205, .211.

Southwestern moved for summary judgment, claiming that section 8 of article 4.11 allows it to carry forward to subsequent years any unused examination and valuation fee credits. The State filed a cross-motion for summary judgment, contending that the credit is good only against an insurance carrier's premium tax liability for the year in which the examination and valuation fees are paid. The trial court granted the State's cross-motion. On appeal, Southwestern challenges the trial court's construction of article 4.11, section 8.

### Discussion

The issue before this Court is whether the credit allowed by section 8 of article 4.11 of the Texas Insurance Code may be used to offset premium tax liability only for the year in which the examination and valuation fees are paid. Because this dispute is wholly about statutory construction, it presents a question of law for the reviewing court to decide. *See Del Indus., Inc. v. Texas Workers' Compensation Ins. Fund,* 973 S.W.2d 743, 745 (Tex.App.—Austin 1998), *aff'd,* 43 Tex. Sup.Ct. J. 589, 2000 WL 351207 (April 6, 2000). The primary rule of statutory interpretation is to ascertain and give effect to the intent of the legislature. *See Union Bankers Ins. Co. v. Shelton,* 889 S.W.2d 278, 280 (Tex. 1994). If the statute is unambiguous, we are required to seek this intent in the plain and common meaning of its words and not elsewhere. *See Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 352 (Tex.1990); *Seay v. Hall,* 677 S.W.2d 19, 25 (Tex.1984). A court may not add words to a statute unless necessary to give effect to clear legislative intent. *See Jones v. Liberty Mut. Ins. Co.,* 745 S.W.2d 901, 902 (Tex. 1988); *Meno v. Kitchens,* 873 S.W.2d 789, 792 (Tex.App.—Austin 1994, writ denied). Implications of statutory intent are forbidden if the legislature's intent can be gathered from a reasonable interpretation of the statute as written. *See Commissioners Court v. Criminal Dist. Attorney,* 690 S.W.2d 932, 936 (Tex.App.—Austin 1985, writ ref'd n.r.e.). Furthermore, we must consider the statute as a whole and avoid construing any clause, sentence, or phrase in isolation from the rest of the statute. *See Morrison v. Chan,* 699 S.W.2d 205, 208 (Tex.1985).

Southwestern argues that because the legislature removed a phrase that clearly restricted the credit's application to tax liability for the year the fees were paid, it implied that the credit could be carried forward. We begin our analysis by looking at the express language of article 4.11 both before and after it was amended.

Prior to 1984 the statute creating the credit stated:

[T]he amount of all examination and valuation fees *paid in such taxable year* to

or for the use of the State of Texas by any insurance organization hereby affected shall be allowed as a credit on the amount of premium taxes to be paid by any such insurance organization *for such taxable year.*

Act of May 30, 1981, 67th Leg., R.S., ch. 746, § 1, 1981 Tex. Gen. Laws 2731, 2731–32 (Tex. Ins.Code Ann. art. 4.11, § 8, since amended) (emphasis added).

In 1984, the legislature restructured article 4.11 and moved the relevant language from section 1 to section 8. It also eliminated the second "such taxable year" phrase: "The amount of all examination and valuation fees paid during each tax year to or for the use of the State of Texas by an insurance carrier shall be allowed as a credit on the amount of premium taxes due under this article. . . ." Tex. Ins.Code Ann. art. 4.11, § 8. The present wording of article 4.11, however, does not say that the credit for examination and valuation fees may be carried forward to offset tax liability in a subsequent year. It never mentions carrying the credit forward or backward. If the legislature wanted to depart so substantially from the credit's limited application, it needed to authorize a carry-forward provision expressly. It did not do so in 1984 or in any subsequent year.

Although the current version of the statute does not explicitly state that examination and valuation fees paid in one year may be applied as a credit against premium tax liability for other years, Southwestern asks us to go beyond the plain meaning of the statute's words and add to it by implication. Southwestern contends that by removing the second "such taxable year" phrase, the legislature signaled its intent to remove all time limitations on the credit and allow it to be applied to premium taxes incurred in any year—past, present, or future. We decline to imply such an intent for several reasons.

We note initially that there is a far more reasonable explanation for the change in the language of the statute. Prior to 1984, the text of article 4.11 was given in four cumbersome and awkwardly worded sections. The amendment broke the article into several smaller sections and cleaned up its previously stilted language. The phrase "such taxable year" occurred twice in the pre–1984 language of section 1. *See* Act of May 30, 1981, 67th Leg., R.S., ch. 746, § 1, 1981 Tex. Gen. Laws 2731, 2731–32 (Tex. Ins.Code Ann. art. 4.11, § 8, since amended). In 1984 the legislature simplified this language by mentioning "each tax year" once and removing the second, repetitious occurrence of the phrase. *See* Tex. Ins.Code Ann. art. 4.11, § 8.

■ This grammatical clean-up of the poorly written statute does not imply the sweeping substantive change that Southwestern advocates. If the legislature wanted to eliminate the time restriction on the credit granted to insurance carriers, why did it retain the phrase "paid during each tax year" in the revised statute? Under Southwestern's construction of article 4, it no longer matters when fees are paid; this phrase is reduced to surplusage. However, we presume that each word of a statute has meaning and will not treat any statutory language as surplusage if possible. *See Chevron Corp. v. Redmon,* 745 S.W.2d 314, 316 (Tex.1987).

Moreover, Southwestern's implied carry-forward authorization leads to an absurd result. If we were to imply a carry-forward provision from the removal of the second "taxable year" phrase, we must also imply a carry-backward provision. And from this same silence, are we to imply that the credit may be carried forward or backward indefinitely? Southwestern admits that we must. In any year that its credit exceeded its tax liability, an insurance carrier could ask the State to refund taxes paid decades earlier or to forgive taxes coming due decades later. Although Southwestern chose to apply its excess 1989 credit to its 1990 tax liability, it could just as well have used the credit to adjust its tax liability for 1970 or 2010. A court should not construe a statute in a

way that leads to foolish or absurd consequences. *See Meno*, 873 S.W.2d at 792. Instead, we presume that the legislature intended a reasonable result. *See Enochs v. Brown*, 872 S.W.2d 312, 318 (Tex.App.—Austin 1994, no writ) (citing Tex. Gov't Code Ann. § 311.021(3) (West 1998)).

Additionally, Southwestern's construction of article 4.11 makes it inconsistent with article 1.16 of the Insurance Code. Article 1.16 authorizes the State Board of Insurance to collect examination expenses but allows a carrier to credit such expenses against its premium tax liability only for such taxable year:

> The amount of the assessments paid in each taxable year to or for the use of the State of Texas by an insurance corporation or association hereby affected *shall be allowed as a credit on the amount of premium taxes to be paid by any such insurance corporation or association for such taxable year* . . . .

Tex. Ins.Code Ann. art. 1.16(b) (West Supp.2000) (emphasis added).

The language of article 1.16 is similar to the pre–1984 version of article 4.11, and it has not been amended. Southwestern urges us to imply that the legislature intended to enact a provision, article 4.11, section 8, that is inconsistent with another provision of the same code, article 1.16(b). We decline to do so. We will not create an inconsistency in statutory provisions by implication. *See Commissioners Court*, 690 S.W.2d at 936. Any inconsistency must be both positive and clear from the terms of the statute itself. *See id.* Indeed when there is a positive and clear inconsistency between two statutes, courts must adopt a reading that harmonizes the statutes if at all possible. *See id.*

Finally, Southwestern's construction overturns longstanding agency interpretation of article 4.11, before and after the 1984 amendment. This Court may give weight to the administrative construction of a statute so long as the construction is reasonable and does not contradict the plain language of the statute. *See Quorum Sales, Inc. v. Sharp*, 910 S.W.2d 59, 62 (Tex.App.—Austin 1995, writ denied).

The summary-judgment evidence establishes that the two agencies charged with enforcing article 4.11[2] have always interpreted the credit as being good against a company's premium tax liability only for the year in which the examination and valuation fees are paid. The agencies' construction has been consistently reflected in the relevant tax forms and was set out explicitly in the Texas Administrative Code in 1996. *See* 21 Tex. Reg. 7045 (1996) (current version at 34 Tex. Admin. Code § 3.830(d) (1999)). When compared to Southwestern's reading of the statute, the agencies' construction is eminently more reasonable.

■ The doctrine of legislative acceptance lends further support to the State's position. When the legislature reenacts without substantial change a statute that has been previously construed by an agency charged with its execution, a court should ordinarily adopt the agency construction. *See Reed v. Texas Dep't of Licensing & Regulation*, 820 S.W.2d 1, 3 n. 2 (Tex.App.—Austin 1991, no writ). "The consistent construction by an administrative agency charged with effectuating the policy of an enactment carries very considerable weight. While assertion of authority does not demonstrate its existence, long continued, uncontested assertion is at least evidence that the legislature conveyed the authority." Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L.Rev. 527, 543 (1947). The legislature has made several amendments to article 4.11 since 1984 but has not changed

---

**2.** Since September 1, 1993, the Comptroller of Public Accounts has been responsible for collecting premium taxes under the Insurance Code. *See* Act of May 30, 1993, 73d Leg., R.S., ch. 685, sec. 3.01, 1993 Tex. Gen. Laws 2559, 2576 (codified at Tex. Ins.Code Ann. art. 1.04D (West Supp.2000)). Before that, the Texas Department of Insurance performed this function.

the language of section 8 to explicitly over-rule the agencies' consistent interpretation that credit for fees paid may not be carried forward.

### Conclusion

On the basis of the above considerations, we conclude as a matter of law that the credit allowed by section 8 of article 4.11 of the Texas Insurance Code may only be offset against an insurance carrier's premium tax liability for the year in which the examination and valuation fees are paid. Excess credit, if any, may not be carried forward or backward. Therefore, we affirm the trial court's summary judgment in favor of the State.