# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-02-00439-CV

---

**Texas Lottery Commission and Linda Cloud, Executive Director, Appellants**

**v.**

**Scientific Games International, Inc. and Pollard Banknote Limited, Appellees**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
NO. GN201204, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING**

---

## O P I N I O N

In February 2002, the Executive Director of the Texas Lottery Commission publicly announced that she would begin to take into account a vendor=s anticipated economic impact on the state in awarding contracts worth over $100,000. Scientific Games International, Inc. (SGI) and Pollard Banknote Limited, two out-of-state companies that design and manufacture instant-ticket games for state lotteries, sought a declaratory judgment that the Commission lacks the authority to adopt this new policy. The trial court agreed with SGI and Pollard and granted summary judgment in their favor. We hold that the Texas Lottery Commission may not consider a vendor=s anticipated economic impact on the state when making its procurement decisions and affirm the summary judgment.

# BACKGROUND

SGI and Pollard each design and manufacture instant-ticket games for state lotteries. SGI is incorporated in Georgia, where it produces its instant tickets. Pollard is a Canadian company that produces its instant tickets in both Canada and the United States. Neither SGI nor Pollard produces tickets in Texas.

The design and manufacture of instant-ticket games is a highly specialized business. Worldwide, there are only three or four companies qualified to produce instant tickets to Texas=s specifications. These companies include SGI, Pollard, and Oberthur Gaming Technologies (OGT), a French company with a manufacturing plant in San Antonio.

In 1999, these three companies competed for a three-year contract to provide the Texas Lottery=s instant-ticket games. Considering the cost to the state and the quality of the product, the Executive Director awarded SGI the contract and Pollard the back-up contract. OGT protested the award. *See* 16 Tex. Admin. Code ' 401.103 (2002). OGT argued that the Commission should broadly interpret the government code provisions setting out its procurement authority to allow it to consider the overall economic impact on the state that would result from awarding the contract to an in-state bidder. The Executive Director disagreed, determining that consideration of economic impact would violate her duty to Apromote competition to the maximum extent possible@ in Commission procurement procedures. Tex. Gov=t Code Ann. ' 466.101(a) (West 1998). She also relied on a statutory requirement that the Commission favor an in-state bidder only to break a tie when the cost to the state and quality of the product are identical in competing bids. *See id.* ' 466.106(a) (West 1998). The Commission affirmed the determination of the Executive Director.

The Commission maintained this position until February 2002. That month, it held a public meeting to consider adding a potential vendor=s economic impact on the state to the factors it considers when awarding a contract. The agenda for the meeting indicated that the discussion was prompted by recent amendments to section 2155.074 of the government code.[1] Section 2155.074 is part of a statute that governs the procurement policies of the Texas Building and Procurement Commission and some other state agencies. In 2001, the legislature passed an amendment to allow these agencies to consider a potential vendor=s economic impact on the state when making their procurement decisions. *See* Act of May 17, 2001, 77th Leg., R.S., ch. 1422, ' 14.16, 2001 Tex. Gen. Laws 5021, 5068 (codified at Tex. Gov=t Code Ann. ' 2155.074(b)(8) (West Supp. 2003)). Section 2155.074 is specifically *not applicable to the Lottery Commission*, which is governed by its own procurement statute. *See* Tex. Gov=t Code Ann. ' 466.105(a) (West 1998) (Lottery Commission not subject to general procurement statute, including government code section 2155.074).

After hearing comments of the Commission=s staff and interested parties, the Executive Director reversed her longstanding policy and announced that the Commission would now consider the Apotential vendor=s economic impact on the state@ in awarding contracts worth over $100,000, beginning with the upcoming procurement for instant-ticket games.

---

[1] The relevant agenda item stated, AReport, possible discussion and/or action on the implementation of government code, ' 2155.074(b)(8) relating to a vendor=s economic impact to Texas in connection with a procurement.@

SGI and Pollard sued the Commission to enjoin consideration of economic impact on the state in the imminent instant-ticket procurement. They also sought a declaration that the Commission lacks the statutory authority to consider economic impact on the state in any of its procurement decisions. The trial court granted the temporary restraining order. The parties then filed cross-motions for summary judgment. The court granted SGI and Pollard=s joint motion and denied the Commission=s motion.

## DISCUSSION

The Commission claims that the trial court erred in granting SGI and Pollard=s joint motion because (1) SGI and Pollard lack standing, and (2) the Commission does have the statutory authority to consider potential economic impact on the state in making its procurement decisions.

### *Standing*

The issue of standing is a legal question which we review *de novo*. *El Paso Cmty. Partners v. B&G/Sunrise Joint Venture*, **24 S.W.3d 620, 624 (Tex. App.C Austin 2000, no pet.).** Standing is a component of subject-matter jurisdiction and is therefore essential to a court=s power to decide a case. *Texas Ass=n of Bus. v. Texas Air Control Bd.*, **852 S.W.2d 440, 444-45 (Tex. 1993);** *Benker v. Texas Dep=t of Ins.*, **996 S.W.2d 328, 330 (Tex. App.C Austin 1999, no pet.). To establish standing, one must show a justiciable interest by alleging an actual or imminent threat of injury peculiar to one=s circumstances and not suffered by the public generally.** *Benker*, **996 S.W.2d at 330;** *see also Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984).

The Commission claims that SGI and Pollard lack standing.  It argues that they **have failed to show how any injury they might suffer differs from that of the public at large.  It also contends that SGI and Pollard have** shown only a speculative, not an **actual or imminent threat of injury.  We find the Commission=s arguments unpersuasive.**

**As outlined above, the Commission announced that it was amending its historical procurement process to include a potential vendor=s anticipated economic impact on the state as a factor in its evaluation of certain bids, including contract proposals for instant-ticket games.  It is uncontested that only three or four companies worldwide qualify to bid for instant-ticket-game contracts.  One of those companies, OGT, has a manufacturing plant in Texas and would unquestionably benefit from the Commission=s consideration of a bidder=s likely economic impact on the state, an evaluation that would no doubt disadvantage SGI and Pollard, which do not have plants in Texas.  Both OGT and the appellees have indicated that they intend to bid at the Commission=s next instant-ticket-game procurement.**

**The public at large is not qualified to bid on lottery contracts; manufacture of instant-ticket games is a major part of SGI and Pollard=s business; inclusion of an economic-impact factor would benefit OGT at the expense of SGI and Pollard.  These facts are more than sufficient to show an actual or imminent threat of injury peculiar to the appellees= circumstances and not suffered by the public generally.  SGI and Pollard unquestionably have standing.  We overrule the Commission=s third issue.**

*Commission Authority*

We now turn to the question of whether the trial court erred in granting summary judgment in favor of SGI and Pollard. Because the propriety of a summary judgment is a question of law, we review the trial court=s decision *de novo. Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994); *Texas Dep=t of Ins. v. American Home Assurance Co.*, 998 S.W.2d 344, 347 (Tex. App.CAustin 1999, no pet.). The standards for reviewing a motion for summary judgment are well established: (1) the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). **The Commission does not rely here on arguments that it raised below, but challenges the legal sufficiency of the grounds alleged in SGI and Pollard=s motion for summary judgment.[2]** *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993).

**An administrative agency has only those powers conferred upon it by clear and unmistakable language.** *Public Util. Comm=n v. City Pub. Serv. Bd.*, **53 S.W.3d 310, 315 (Tex. 2001). When the legislature expressly confers a power on an agency, it also impliedly intends**

---

[2] Normally, when the trial court grants one party=s motion for summary judgment and denies the other, we review both motions and if we find that the trial court erred, we will reverse and render the judgment that the trial court should have rendered. *See Bradley v. State ex rel. White*, 990 S.W.2d 245, 247 (Tex. 1999). In its brief, the Commission asks that we reverse the trial court=s summary judgment in favor of SGI and Pollard and render judgment in its favor. But at oral argument the Commission conceded that it was only challenging the legal sufficiency of SGI and Pollard=s summary-judgment grounds.

**that the agency have whatever powers are reasonably necessary to fulfill its express functions or**

**duties.** *Public Util. Comm=n v. GTE-Southwest, Inc.*, **901 S.W.2d 401, 407 (Tex. 1995). An**

**agency may not, however, exercise what is effectively a new power on the theory that such**

**exercise is expedient for the agency=s purposes.** *Id.*

Section 466.101(a) of the government code provides that:

> The [E]xecutive [D]irector [of the Lottery Commission] may establish procedures for the purchase or lease of facilities, goods, and services and make any purchases, leases, or contracts that are necessary for carrying out the purposes of this chapter. The procedures must, as determined feasible and appropriate by the [E]xecutive [D]irector, promote competition to the maximum extent possible.

Tex. Gov=t Code Ann. ' 466.101(a). Section 446.101(b) provides that A[i]n all procurement decisions, the

[E]xecutive [D]irector shall take into account the particularly sensitive nature of the lottery and shall act to

promote and ensure . . . the objective of producing revenues for the state treasury.@ *Id.* ' 466.101(b). The

Commission argues that consideration of economic impact both promotes competition and fulfills the

legislative objective of producing revenues for the state treasury. We disagree.

The Commission=s arguments are partially based on a narrow interpretation of how it

proposes to measure a bidder=s economic impact on the state. It claims that its upcoming request for

proposal would have measured economic impact entirely in terms of additional full-time positions and wages

that performance of the winning proposal would add to the state.[3] The Commission then contends that

---

[3] The Commission has appended to its brief a document purporting to be the request for proposal that it would have issued had it not been enjoined by the trial court. It also filed a motion to supplement the appellate record with this document. Because the document was not part of the record

7

consideration of economic impact actually promotes competition because Aall vendors who bid will be required to seek the best way to increase the number of employees in Texas, resulting in an impact on Texas=s economy.@ This argument depends on an unreasonable interpretation of the words Apromote competition@ in the context of this statute. *See Southwestern Life Ins. Co. v. Montemayor*, **24 S.W.3d 581, 583 (Tex. App.C Austin 2000, pet. denied) (A[i]mplications of statutory intent are forbidden if the legislature=s intent can be gathered from a reasonable interpretation of the statute as written@).** Under the Commission=s reading of the statute, the language requiring the Executive Director to Apromote competition to the maximum extent possible@ does not substantively restrict the criteria the Commission may consider in its procurement procedures. The Commission instead implies that Apromot[ing] competition@ means only that each potential bid must be evaluated under the same criteria. Such a broad reading of the word Acompetition@ is misplaced in the context of a statute addressing procurement policies. *See Texas Workers=Comp. Ins. Fund v. Del Indus., Inc.*, **35 S.W.3d 591, 593 (Tex. 2000) (construing statute in context of express statutory scheme developed by legislature).**

In enacting competitive-bidding statutes, the legislature seeks to maximize competition for government contracts in order to obtain the best work or product at the lowest practicable price. *See Texas Highway Comm=n v. Texas Ass=n of Steel Importers*, 372 S.W.2d 525, 527 (Tex. 1963). An

---

below, we denied the motion. *See* Tex. R. App. P. 34.5(c).

Relatedly, we reject the Commission=s argument in its fourth issue that it was improper to grant summary judgment in favor of SGI and Pollard because the record did not contain a request for proposal implementing its new policy. SGI and Pollard sought and received a declaration that the Commission could not utilize *any* economic impact factor in its procurement decisions. Their summary-judgment proof was legally sufficient to prove this proposition.

agency subject to a competitive-bidding statute is therefore limited in its procurement decisions to considerations relating to quality or price in the absence of explicit statutory authority to consider additional factors. *Cf. id.* Section 466.101(a) requires the Commission to promote competition to the maximum extent possible and does not explicitly grant the Commission the authority to consider factors other than quality or price. We reject the Commission=s contention that considering economic impact actually promotes competition.

The Commission next claims section 466.101(b) requires the Executive Director to take into account the objective of producing revenues for the state treasury in making her procurement decisions. *See* Tex. Gov=t Code Ann. ' 466.101(b). The Lottery Commission is somewhat unique in that it exists in order to produce revenues for the state by selling Achances@ to receive a prize. *See id.* ' 466.002(5) (West 1998). Section 466.101(b) simply requires the Commission to consider its bottom line when awarding contracts. That is, it requires the Executive Director to consider the objective of producing revenues for the state treasury *from the lottery itself*. *See id.* ' 466.101(b). By lowering its expenses through the use of competitive bidding, the Commission will ensure higher revenues for the state treasury through the operation of the lottery. Section 466.101(b) does not authorize the Commission to jeopardize lottery revenues to favor other economic benefits such as increased employment in the state or increased collection of franchise taxes.

Other provisions of the government code confirm our conclusion that the legislature did not intend to authorize the Commission to consider the general economic impact on the state in making its procurement decisions. In section 466.106(a), the legislature has stated that the Commission may give a

**9**

preference to goods produced in this state only when the cost and quality of competing bids are equal.[4]

When the legislature has spoken so directly, an agency may not act in a way that effectively nullifies the legislature=s pronouncement, even though the matter may fall within the general regulatory field of that agency. *See, e.g.*, *Central Educ. Agency v. Sellhorn*, 781 S.W.2d 716, 718 (Tex. App.CAustin 1989, writ denied). The legislature has determined that a potential bidder=s Texas location is relevant only when the cost and quality set out in competing bids are equal. *See* Tex. Gov=t Code Ann. ' 466.106(a). However, by favorably considering a bidder=s potential economic impact on the state, the Commission will in fact create an in-state preference unrelated to cost or quality.

The Commission now argues that by giving credit only to a bidder who creates new jobs in Texas (its alleged measure of economic impact, which is not part of the record before this court), it would not be favoring an in-state bidder. The Commission asserts a distinction without a difference. Even if its restricted policy were before us, which it is not, we would reject the assertion that such a measure of economic impact would not advantage in-state bidders and thus run afoul of section 466.106(a). Simply put, by considering economic impact in the bidding process, the Commission would not be promoting competition to the maximum extent possible, as section 466.101(a) requires. We overrule the Commission=s first two issues.[5]

---

[4] The Commission has interpreted the term Acost,@ as used in this statute, to mean the *price* at which the Executive Director can purchase goods or services. *See* 16 Tex. Admin. Code ' 401.101(a)(16) (2002).

[5] We reject the Commission=s argument the section 315.003 of the government code indicates that the legislature intended the Commission to consider economic impact in its procurement decisions. *See* Tex. Gov=t Code Ann. ' 315.003 (West 1998) (stating that Athe continuing policy of this state is to maintain and

create conditions that will sustain and promote the economy, employment, and economic opportunities for the people of Texas@).  Chapter 315 requires a state agency, when requested by the Lieutenant Governor or Speaker of the House, to prepare an economic-impact statement for pending legislation that directly affects that agency.  *See id.* ' 315.002-004 (West 1998).  It has nothing to do with agency procurement policies.  *See id.*  The general statement of policy that the Commission relies on does not expand any agency=s procurement authority.

Having determined that the trial court did not err in declaring that the Commission lacked statutory authority to consider economic impact on the state in making its procurement decisions, we need not address the Commission=s contention that such policy is consistent with its own rules. *See* Tex. R. App. 47.1.

## CONCLUSION

The Commission is subject to a competitive-bidding statute. Absent explicit statutory authority to the contrary, it must base its procurement decisions on factors relating to quality and price. Because the Commission does not possess the statutory authority to consider the general economic impact on the state in making its procurement decisions, we affirm the summary judgment in favor of SGI and Pollard.

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed:   February 21, 2003

12