# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-02-00543-CV

**B.C., Appellant**

**v.**

**Scotty L. Rhodes on behalf of T.L.R., Appellee**

FROM THE COUNTY COURT AT LAW NO. 4 OF TRAVIS COUNTY
NO. 262619, HONORABLE MIKE DENTON, JUDGE PRESIDING

## O P I N I O N

A student at the Texas School for the Deaf claimed that another student she had been dating raped her. Both students are minors. After a hearing, the trial court found that dating violence had occurred and entered a family-violence protective order. The boy who is subject to the order appeals, claiming that (1) only an adult member of a dating relationship is entitled to seek a family-violence protective order on the basis of dating violence, and (2) the evidence is legally and factually insufficient to support the court's finding that he had committed an act of dating violence. The State has filed a motion to dismiss alleging that we are without jurisdiction to review family-violence protective orders. We hold that, in the absence of other pending litigation between the parties, family-violence protective orders are final and appealable, that minors in dating relationships are entitled to seek such orders, and that there is legally and factually sufficient evidence to support the court's order in this case. We therefore affirm the protective order.

## BACKGROUND

B.C. and T.L.R. were eighth-grade classmates at the Texas School for the Deaf. They both lived on campus during the school year. T.L.R. testified that just prior to the assault, she considered B.C. to be her "boyfriend."

After the two had been "dating" for around two weeks, B.C. initiated an unwanted sexual encounter with T.L.R. One day after school B.C. approached T.L.R. and told her that he wanted to have sex with her. T.L.R. told him "no" and went into a girls' restroom to "try to get away from him." B.C. followed her into the restroom. When he came in she was standing at the far end of the restroom. She told him, "I don't want this." He then approached her and started to take her clothes off. She did not struggle with him because he had a "really weird look on his face" that scared her.[1] After he had removed all of her clothes, he undressed and told her to "lay down on the floor." Fearful, she complied. B.C. penetrated her. She then pushed him off of her, put her clothes on, and left the restroom. B.C. also got dressed, told T.L.R. not to tell anyone about the incident, and attempted to hug her before she left. T.L.R. testified that while B.C. was on top of her "[her] stomach hurt," and later that day she was scared, could not eat, and her stomach continued to hurt "real bad."

The next day T.L.R. "broke up" with B.C. in the cafeteria, telling him, "This is off." Several of their classmates were present and B.C. became angry and left. In the days following the

___

[1] T.L.R.'s counselor testified that T.L.R. later told her that she was afraid of B.C. during this encounter because she knew he had "a tendency to . . . blow up."

2

restroom encounter, T.L.R. related what had happened to her to close friends and some school staff members.

The school initially took steps to protect T.L.R. by putting B.C. in an "alternative education program"—which segregated him from the rest of the school—for ten days. A week after the incident, however, the school placed the two students on the same bus to take them to their respective homes in Waco and Dallas for the weekend. A few weeks after that, T.L.R.'s father sought to obtain a protective order on her behalf. The court first issued a temporary order, then, after holding a hearing, issued a final protective order requiring among other things that B.C. refrain from communicating with T.L.R. and her family, from following and harassing T.L.R and her family, and from going within 25 feet of T.L.R.

## DISCUSSION

### *Jurisdiction*

In *Bilyeu v. Bilyeu* we held that a family-violence protective order rendered during the pendency of the parties' divorce is not a final judgment for purposes of appeal. 86 S.W.3d 278, 282 (Tex. App.—Austin 2002, no pet.). At that time we expressly reserved "the issue of whether a protective order rendered post-divorce or in the absence of a pending divorce between the parties is within our jurisdiction to review by appeal."[2] We resolve that issue today.

---

[2] Because this issue was not before the *Bilyeu* court, we do not today retreat from the path defined in *Bilyeu*, as the dissent suggests. Rather we distinguish the lack of finality of a protective order issued in the context of a pending divorce which has not disposed of all issues between the parties from the finality of other protective orders that dispose of all issues and all parties.

Family-violence protective orders generally remain in effect for the period stated in the order, which cannot exceed two years. *See* Tex. Fam. Code Ann. § 85.025(a)(1) (West 2002). Such orders are valid and enforceable pending further action by the rendering court or until the order is properly superseded by another court with jurisdiction over the order. *See id.* § 85.009 (West 2002). The issuing court has the power to modify an existing protective order after notice and hearing, *see id.* § 87.001 (West 2002); however, the order generally may not be modified to extend the period of its validity beyond two years after the order was rendered. *See id.* § 87.002 (West 2002).

Appellate courts have jurisdiction over appeals from final judgments and certain interlocutory orders that the legislature has designated appealable. *Bilyeu*, 86 S.W.3d at 279; *see Hinde v. Hinde*, 701 S.W.2d 637, 639 (Tex. 1985); Tex. Civ. Prac. & Rem. Code Ann. §§ 51.012, .014 (West 1997 & Supp. 2003). A judgment or order is final if it disposes of all issues and parties. *See Hinde*, 701 S.W.2d at 639; *Cooke v. Cooke*, 65 S.W.3d 785, 787 (Tex. App.—Dallas 2001, no pet.). Conversely, a judgment or order is interlocutory if it fails to dispose of all issues and parties. *Cooke*, 65 S.W.3d at 787.

Many of our sister courts have addressed this jurisdictional issue and concluded that family-violence protective orders are final and appealable. *See, e.g.*, *Kelt v. Kelt*, 67 S.W.3d 364, 366 (Tex. App.—Waco 2001, no pet.); *Cooke*, 65 S.W.3d at 787-88; *Striedel v. Striedel*, 15 S.W.3d 163, 164-65 (Tex. App.—Corpus Christi 2000, no pet.); *Winsett v. Edgar*, 22 S.W.3d 509, 510 (Tex. App.—Fort Worth 1999, no pet.); *James v. Hubbard*, 985 S.W.2d 516, 518 (Tex. App.—San Antonio 1998, no pet.). The only court in the state to ever hold in a published opinion that these

4

protective orders are not appealable was the Tenth Court of Appeals in *Normand v. Fox*. 940 S.W.2d 401, 402-04 (Tex. App.—Waco 1997, no writ). However, that court recently reversed its position and determined that protective orders are indeed final and appealable judgments. *See Kelt*, 67 S.W.3d at 366. In *Normand*, the court had reasoned that because the trial court retains the power to modify a protective order, such an order does not settle all disputed issues requiring judicial discretion and is therefore interlocutory. *See* 940 S.W.2d at 403.

We disagree with the proposition that the continuing ability to modify a protective order renders it interlocutory and therefore prevents it from being appealable. An analogy with permanent injunctions is instructive: a permanent injunction that disposes of all issues and parties is undoubtedly a final, appealable judgment. *See Hubbard*, 985 S.W.2d at 517. This is true despite the fact that the trial court retains jurisdiction to review, open, vacate, and modify the injunction upon a showing of changed conditions. *See Cooke*, 65 S.W.3d at 788. Indeed, it appears that the trial court has even broader discretion to modify appealable permanent injunctions than it does protective orders. *See id.* While a trial court may vacate a permanent injunction upon a showing of changed conditions, it may not similarly vacate a protective order on the motion of a party until at least one year after the order was rendered. *Id.* (citing Tex. Fam. Code Ann. § 85.025(b)). Instead, the trial court's jurisdiction during the first year of a protective order is limited to modification of the order. *Id.* (citing Tex. Fam. Code Ann. § 87.001).

As with permanent injunctions, the trial court's continuing ability to modify a family-violence protective order does not convert it from final to interlocutory. *See id.* It is the disposition of the parties and the issues—not the retention of jurisdiction—that determines the finality of an

5

order.  *See id.*  The mere fact that an order may someday be modified simply does not suggest that the trial court has not finally disposed of all the parties and issues.  *See id.*  We hold that a family-violence protective order that disposes of all the parties and issues can be appealed despite the continuing jurisdiction of the trial court to modify the order.  Because the protective order in this case disposed of all the parties and issues, we overrule the State's motion to dismiss and address the merits of the case.[3]

### Minors and Dating Violence

In his first point of error, B.C. argues that only an adult member of a dating relationship is entitled to seek a family-violence protective order for dating violence.  Because T.L.R. is a minor, B.C. claims that the court was without subject-matter jurisdiction to issue the protective order.  We disagree with B.C.'s interpretation of the family code.

The primary rule of statutory interpretation is to ascertain and give effect to the intent of the legislature.  *Southwestern Life Ins. Co. v. Montemayor*, 24 S.W.3d 581, 583 (Tex. App.—Austin 2000, pet. denied) (citing *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex. 1994)).  If the statute is unambiguous, we are required to seek this intent in the plain and common meaning of its words and not elsewhere.  *Id*. (citing *Moreno v. Sterling Drug, Inc.*, 787

---

[3] The *Normand* court concluded that because protective orders are not appealable, mandamus is the appropriate remedy to challenge them.  *See* 940 S.W.2d at 404.  We note that neither mandamus nor appeal provides for very effective review of protective orders.  Mandamus is a more expeditious remedy, but review is limited to an abuse of discretion standard.  Conversely, because of its short duration, a protective order will often expire before a standard appeal is decided.  *See id*. at 404-05 (Vance, J., dissenting).  We feel that the most appropriate solution to this problem would be for the legislature to provide for appellate review of family-violence protective orders on an accelerated timetable.  *Cf. id.*

S.W.2d 348, 352 (Tex. 1990); *Seay v. Hall*, 677 S.W.2d 19, 25 (Tex. 1984)).  A court may not add

words to a statute unless necessary to give effect to clear legislative intent.  *Id.* (citing *Jones v.*

*Liberty Mut. Ins. Co.*, 745 S.W.2d 901, 902 (Tex. 1988); *Meno v. Kitchens*, 873 S.W.2d 789, 792

(Tex. App.—Austin 1994, writ denied)).  Furthermore, we must consider the statute as a whole and

avoid construing any clause, sentence, or phrase in isolation from the rest of the statute.  *Id.* (citing

*Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex. 1985)).

Section 71.004 of the family code defines family violence as

(1)   an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault . . . ;

(2)   abuse . . . by a member of a family or household toward a child of the family or household; or

(3)   dating violence, as that term is defined by [s]ection 71.0021.[4]

Tex Fam. Code Ann. § 71.004 (West 2002).

---

[4] Section 71.0021, in turn, defines dating violence as

an act by an individual that is against another individual with whom that person has or has had a dating relationship [*i.e.*, a continuing relationship of a romantic or intimate nature] and that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the individual in fear of imminent physical harm, bodily injury, assault, or sexual assault.

Tex. Fam. Code Ann. § 71.0021 (West 2002).

7

Section 82.002 sets out who is entitled to seek a protective order:

(a)  With regard to family violence under [s]ection 71.004(1) or (2), an adult member of the family or household may file an application for a protective order to protect the applicant or any member of the applicant's family or household[.]

(b)  With regard to family violence under [s]ection 71.004(3) [*i.e.*, dating violence], an application for a protective order to protect the applicant may be filed by an adult member of the dating relationship.

(c)  Any adult may apply for a protective order to protect a child from family violence.

*Id.* § 82.002 (West 2002).

B.C. interprets section 82.002(b)—which states that an adult member of a dating relationship may file an application for a protective order—as being the exclusive statutory authorization for filing such an application. His argument entirely ignores section 82.002(c), which states that "any adult may apply for a protective order to protect a child from family violence." *Id.* Because "dating violence" is expressly defined as a type of "family violence," it follows that any adult may apply for a protective order to protect a child from dating violence. Section 82.002(b) actually operates to restrict adults from filing applications for dating-violence protective orders on behalf of other adults—something they are entitled to do in some circumstances for other types of family violence under section 82.002(a). *See* John J. Sampson, et al., *Sampson & Tindall's Texas Family Code Annotated* § 82.002, cmt. (12th ed. 2002) ("[A]ny adult may apply for a protective order for the benefit of a child who is the victim of dating violence."). We overrule the first issue on appeal.

8

*Sufficiency of the Evidence*

At the conclusion of the hearing, the court found that B.C. had committed family violence against T.L.R. In his second and third points of error, B.C. contends that the evidence is legally and factually insufficient to support the court's finding.

We review legal and factual sufficiency issues in a bench trial using the same standards that we use in reviewing such issues following a jury verdict. *See K.C. Roofing Co. v. Abundis*, 940 S.W.2d 375, 377 (Tex. App.—San Antonio 1997, writ denied). In considering legal sufficiency, we consider all the evidence in the light most favorable to the prevailing party, indulging every inference in that party's favor. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285-86 (Tex. 1998); *Raymond v. Rahme & Williams Invs.*, 78 S.W.3d 552, 555-56 (Tex. App.—Austin 2002, no pet.). In reviewing factual sufficiency, we consider all of the evidence and uphold the finding unless the evidence is too weak to support it or the finding is so against the overwhelming weight of the evidence as to be manifestly unjust. *Raymond*, 78 S.W.3d at 556. The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id.*; *Cohn v. Comm'n for Lawyer Discipline*, 979 S.W.2d 694, 696 (Tex. App.—Houston [14th Dist.] 1998, no pet.). We will not substitute our judgment for that of the trial court merely because we might reach a different conclusion. *Raymond*, 78 S.W.3d at 556; *Cohn*, 979 S.W.2d at 696.

As mentioned above, the family code defines dating violence as an act against an individual with whom one has or has had a dating relationship—*i.e.*, a continuing relationship of a romantic or intimate nature—intended to result in physical harm, bodily injury, assault, or sexual

9

assault, or a threat that reasonably places the individual in fear of imminent physical harm, bodily injury, assault, or sexual assault. Tex. Fam. Code Ann. §§ 71.004, .0021. B.C. does not challenge the court's finding that he and T.L.R. were involved in a dating relationship; instead, he claims that there is legally and factually insufficient evidence to prove that the requisite "act" or "threat" occurred.

B.C.'s argument relies on conflicting evidence. Patti McGinnis—one of the staff members in whom B.C. confided—initially testified that B.C. had told her that "they took their clothes off, she changed her mind and then said 'no.'" When recalled to explain this testimony, McGinnis stated that T.L.R. had told her that T.L.R. helped B.C. remove her clothes; however, the subject of whether T.L.R. had ever "changed her mind" was not again discussed.

T.L.R.'s testimony was different. She claimed that she told B.C. "no" twice before he began to undress her, and that she did not help him undress her. Moreover, when T.L.R. was recalled after McGinnis testified, T.L.R. explained: "I think [McGinnis] misunderstood me because of our different signing maybe. I think she misunderstood me because sometimes she doesn't really understand my signs real well, but what I meant to say was that he took off my clothes."[5]

Making all inferences in favor of the trial court's finding, as we must, we conclude that T.L.R.'s testimony describing B.C.'s forced sexual penetration of her constitutes more than a scintilla of evidence that B.C. engaged in an act intended to result in physical harm, bodily injury,

---

[5] In his factual recitations supporting his second and third points of error, B.C. states that "certain witnesses testified through a sign language interpreter resulting in various opportunities for confusion due to the differences between spoken English and American Sign Language." We find little evidence of any such confusion. The one ambiguity that did come up was satisfactorily clarified by the interpreter.

assault, or sexual assault to T.L.R. Moreover, we cannot say that the evidence is too weak to support the court's finding or that the finding is so against the overwhelming weight of the evidence as to be manifestly unjust. As the sole judge of the credibility of the witnesses and the weight to be given their testimony, the court was entitled to believe T.L.R.'s version of events. We overrule B.C.'s second and third issues.[6]

## CONCLUSION

In the absence of other pending litigation between the parties, family-violence protective orders are final and appealable. Adults may apply for a protective order for the benefit of a child who is the victim of dating violence. We hold that the evidence is legally and factually sufficient to support the court's findings in this case and affirm the entry of the protective order.

---

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear: Opinion by Justice B. A. Smith; Dissenting Opinion by Chief Justice Law

Affirmed

Filed: September 11, 2003

---

[6] B.C. also claims that the evidence is legally and factually insufficient to support the trial court's finding that "family violence [is] likely to occur again in the future." We disagree. T.L.R. consistently testified that she feared B.C. The record contains evidence that, while in his alternative education program, B.C. sent a hostile message to T.L.R. through his friend. Moreover, the fact that the school put T.L.R. and B.C. on the same bus so soon after the incident indicates that it is not taking sufficient care to prevent the recurrence of such an incident.

11