TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-05-00494-CV






Mid-Century Insurance Company, Appellant


v.


Texas Workers' Compensation Commission, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT

NO. GN400059, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING





O P I N I O N




 In 2001, appellee, the Texas Workers' Compensation Commission (now the Texas
Department of Insurance, Division of Workers' Compensation) (the Division), (1) amended its
administrative rules to require that lifetime income benefits under workers' compensation (LIBs) be
paid retroactively from the original date of disability. See 26 Tex. Reg. 10933 (2001) (codified at
28 Tex. Admin. Code § 131.1(b) (2001)). Contending that the amended rule made it liable for LIBs
months or even years before some injured employees become eligible to receive the benefits,
appellant Mid-Century Insurance Company (Mid-Century) sought a declaration that this rule exceeds
the Division's statutory powers and is thus invalid. See Tex. Civ. Prac. & Rem. Code Ann. § 37.004
(West 1997). After a bench trial, the district court rendered judgment against Mid-Century. Because
we conclude that the rule exceeds the Division's statutory authority, we will reverse and render
judgment for Mid-Century.


BACKGROUND


Workers' compensation and lifetime income benefits

 The Texas Workers' Compensation Act (the Act) provides four separate categories
of benefits for injured employees: medical, income, death, and burial. See Tex. Lab. Code Ann.
§ 401.011(5) (West 1996). The category of income benefits is itself divided into four parts: (1)
temporary income benefits; (2) impairment income benefits; (3) supplemental income benefits; and
(4) LIBs. See generally id. §§ 408.101-.162 (West 1996 & Supp. 2005). These four types of income
benefits are distinct from one another and are discussed in separate subchapters of the Act. Texas
Gen. Indem. Co. v. Texas Workers' Comp. Comm'n, 36 S.W.3d 635, 640 (Tex. App.--Austin 2003,
no pet.).

 The legislature provided that LIBs are equal to 75 percent of the employee's average
weekly wage, with three-percent annual increases, and are "paid until the death of the employee." 
Tex. Lab. Code Ann. § 408.161(a) & (c). Such benefits are payable for certain enumerated classes
of severe injuries that are permanent in nature, including total and permanent loss of sight in both
eyes; loss of both feet, both hands, or one foot and one hand; a spinal injury that results in permanent
and complete paralysis of both arms, both legs, or one arm and one leg; and third-degree burns that
cover at least 40 percent of the body and require grafting or cover the majority of either both hands
or one hand and the face. Id. § 408.161(a). The legislature further provided that for purposes of
determining eligibility for LIBs, "the total and permanent loss of use of a body part is the loss of that
body part." Id. § 408.161(b).


Rule 131.1

 In 2001, the Division amended rule 131.1 to provide, in relevant part, that "[l]ifetime
income benefits begin to accrue as provided by the Texas Workers' Compensation Act (the Act),
§ 408.082, and are payable retroactively from the date of disability." See 26 Tex. Reg. 10933 (2001)
(codified at 28 Tex. Admin. Code § 131.1(b) (2001)). When making this change, the Division
rejected suggestions that LIBs should instead become payable only after the employee actually
becomes eligible to receive LIBs. See 26 Tex. Reg. 10933, 10934 (2001). With many LIB-qualifying compensable injuries, the date of LIB eligibility and disability are the same, such as when
an employee loses an eye and the loss impacts their earning capacity. However, among other
comments to the proposed rule was an observation that some compensable injuries may not
immediately be severe enough to qualify for LIBs, but would qualify at a later point in time (e.g., an
injury to an employee's hands that gradually deteriorates until he or she completely and permanently
loses their use). (2) Id. It was suggested that the injured employee could draw other forms of workers'
compensation income benefits, and even return to work, before the injury worsened into an LIB-qualifying condition months or even years later, yet would be entitled to LIBs for the entire period
since the original disability. Id. The Division declined to modify rule 131.1's provision making
LIBs retroactive, although it did state that any previous amount already paid by carrier as other types
of income benefits would be redesignated as LIBs and credited against the total LIBs then
retroactively due. Id.

 On January 8, 2004, Mid-Century filed a suit against the Division seeking a
declaratory judgment that rule 131.1 be declared invalid to the extent it requires carriers to pay LIBs
retroactively from the date of an employee's disability rather than from the date the employee first
qualified for those benefits. On June 20, 2005, after a bench trial, the district court rendered
judgment in favor of the Division. This appeal followed.


DISCUSSION


 Mid-Century presents one issue on appeal, contending that the Division exceeded 
its statutory authority in adopting rule 131.1(b). We agree.


Standard of review

 The Division may exercise only those powers that the legislature confers upon it in
clear and express language and cannot exercise what really amounts to a new or additional power
for the purpose of administrative expediency. Texas Natural Res. Conservation Comm'n v.
Lakeshore Util. Co., 164 S.W.3d 368, 377 (Tex. 2005); Public Util. Comm'n v. City Pub. Serv. Bd.
of San Antonio, 53 S.W.3d 310, 316 (Tex. 2001). This is because the Division is a creature of the
legislature with no inherent authority of its own. Lakeshore Util. Co., 164 S.W.3d at 377. However,
"[w]hen the Legislature expressly confers a power on an agency, it also impliedly intends that the
agency have whatever powers are reasonably necessary to fulfill its express functions or duties." Id.
at 378. An agency created to centralize expertise in a certain regulatory area is ordinarily "given a
large degree of latitude in the methods it uses to accomplish its regulatory function." Texas Mun.
Power Agency v. Public Util. Comm'n, 150 S.W.3d 579, 586 (Tex. App.--Austin 2004, pet.
granted). Nonetheless, an agency may not, in the guise of implied powers, exercise what is
effectively a new power, or a power contrary to statute, on the theory that such exercise is expedient
for the agency's purpose, City of Austin v. Southwestern Bell Tel. Co., 92 S.W.3d 434, 441 (Tex.
2002), nor may it contravene specific statutory language, run counter to the general objectives of the
statute, or impose additional burdens, conditions, or restrictions in excess of or inconsistent with the
relevant statutory provisions. State v. Public Util. Comm'n of Tex., 131 S.W.3d 314, 321 (Tex.
App.--Austin 2004, pet. denied). 

 In a facial challenge to a rule, we do not consider the merits of the Division's rule on
a case-by-case basis. City of Garland v. Public Util. Comm'n of Tex., 165 S.W.3d 814, 819 (Tex.
App.--Austin 2005, pet. filed). Rather, we consider whether the rule: (1) contravenes specific
statutory language; (2) runs counter to the general objectives of the statute; or (3) imposes additional
burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions. 
Public Util. Comm'n of Tex., 131 S.W.3d at 321.

 Statutory construction presents a question of law that we review de novo. Johnson
v. City of Fort Worth, 774 S.W.2d 653, 656 (Tex. 1989). We construe statutory provisions in order
to ascertain and effectuate legislative intent. Texas Dep't of Protective & Regulatory Servs. v. Mega
Child Care, Inc., 145 S.W.3d 170, 176 (Tex. 2004). In ascertaining legislative intent, we may
consider the evil sought to be remedied, the legislative history, and the consequences of a particular
construction. See Liberty Mut. Ins. Co. v. Garrison Contractors, Inc., 966 S.W.2d 482, 484 (Tex.
1998). Further, we read every word, phrase, and expression in a statute as if it were deliberately
chosen and presume the words excluded from the statute are done so purposefully. See Gables
Realty Ltd. P'ship v. Travis Cent. Appraisal Dist., 81 S.W.3d 869, 873 (Tex. App.--Austin 2002,
pet. denied). In the case of the Workers' Compensation Act, this is not only a presumption: the
legislature, in fact, carefully balanced the competing interests of injured employees, employers, and
insurance carriers in an attempt to create a viable compensation system, all within constitutional
limitations. See Texas Workers' Comp. Comm'n v. Garcia, 893 S.W.2d 504, 521 (Tex. 1995).

 Generally, we will accept the words used in a statute according to their ordinary
meaning, unless given a specific statutory definition. City of Austin, 92 S.W.3d at 442; see also Tex.
Gov't Code Ann. § 311.011(a) (West 2005) (providing that "words and phrases should be read in
context and construed according to the rules of grammar and usage"). Finally, while we have
acknowledged that an agency's construction of a statute within its area of expertise should be given
serious consideration, this axiom applies only as long as the construction is reasonable and does not
contradict the statute's plain language. See AT&T Communications of Tex. L.P. v. Southwestern Bell
Tel. Co., No. 03-0789, slip opinion at 19, 2006 Tex. LEXIS 93, at *33-34 (Tex. Jan. 27, 2006)
(stating that an agency is entitled to "some deference" in construing statutes affecting its jurisdiction
as long as the construction is reasonable); Southwestern Life Ins. Co. v. Montemayor, 24 S.W.3d 581,
585 (Tex. App.--Austin 2000, pet. denied); see also Texas Gen. Indem. Co. v. Eisler, 981 S.W.2d
744, 747 n.2 (Tex. App.--Houston [1st Dist.] 1998, no pet.). 


Application

 Labor code section 408.161 addresses LIBs. In its corresponding provisions
governing the three other types of income benefits, the legislature stated a specific date on which
each class of income benefit would become payable. See Tex. Lab. Code Ann. §§ 408.082 & .101
(employee entitled to temporary income benefits beginning on eighth day of disability and continuing
until employee reaches maximum medical improvement), .121 (employee entitled to impairment
income benefits from day after date employee reaches maximum medical improvement until earlier
of employee's death or expiration of period based on percentage of impairment), .142 (employee
entitled to supplemental income benefits if he or she meets certain qualifying conditions upon 
expiration of impairment income benefits). In section 408.161, the legislature stated simply that
"lifetime income benefits are paid until the death of the employee for" the seven categories of severe,
permanent injuries enumerated in that section. Id. § 408.161 (emphasis added). While several of
these categories include injuries that would obviously and immediately qualify an employee for
lifetime income benefits, id. § 408.161(a)(1)-(4), (7), others embrace qualifying injurious conditions
that could be degenerative or slower-developing. Id. § 408.161(a)(5) (spinal injuries resulting in
paralysis), (b) (total and permanent loss of use of body part constitutes loss of that body part). We
must assume that the legislature contemplated the prospect of these slower-developing but ultimately
LIB-qualifying conditions when crafting the statute. See Gables Realty Ltd. P'ship, 81 S.W.3d at
873 (stating that every word, phrase, and expression in statute should be read as if it were
deliberately chosen). 

 The Division characterizes section 408.161 as "silent" concerning the time at which
LIBs become payable. We disagree. The legislature specifically reserved LIBs for seven enumerated
categories of injurious conditions that include both immediately qualifying injuries and those
evolving or deteriorating over time. It further provided that LIBs are payable "for" those conditions.
We conclude that the legislature intended for LIBs to become payable if and when an employee
becomes eligible to receive them--not before. 

 An employee is eligible to receive LIBs on the date that employee suffers from one
of the conditions specified in section 408.161. Section 408.161 does not permit payment of LIBs
prior to that date. Once an employee is adjudicated eligible to receive LIBs, however, LIBs should
be paid retroactively to the date the employee first became eligible.

 Nothing elsewhere in the Act suggests a contrary intent. The Division relies chiefly
upon section 408.082 of the Act, which provides in relevant part:


ACCRUAL OF RIGHT TO INCOME BENEFITS


(a) Income benefits may not be paid under this subtitle for an injury that does not
result in disability for at least one week.


(b) If the disability continues for longer than one week, weekly income benefits
begin to accrue on the eighth day after the date of the injury. If the disability
does not begin at once after the injury occurs or within eight days of the
occurrence but does result subsequently, weekly income benefits accrue on the
eighth day after the date on which the disability began. 


(c) If the disability continues for four weeks or longer after the date it begins,
compensation shall be computed from the date the disability begins.



Tex. Lab. Code Ann. § 408.82. We conclude, for two principal reasons, that section 408.082 does
not address when LIBs become payable.

 First, section 408.082 has been held to apply solely to the temporary income benefits
governed by section 408.101, not other types of income benefits. See Eisler, 981 S.W.2d at 746-47. 
The Eisler court acknowledged that section 408.082 references "income benefits" (which would
literally include not only temporary income benefits, but impairment income benefits, supplemental
income benefits, and LIBs) and appears in a subsection titled "Income Benefits in General." Id.; see
Tex. Lab. Code Ann. § 401.011(25) (defining "income benefit" as "a payment made to an employee
for a compensable injury" that is not "a medical benefit, death benefit, or burial benefit."). (3) 
Nonetheless, the court concluded that section 408.082 could not apply to impairment income benefits
because section 408.121 provided that an employee's entitlement to those benefits began on the day
after the employee reached maximum medical improvement. Eisler, 981 S.W.2d at 746-47. In light
of section 408.121, the court concluded that "the legislature intended that an injured worker who
reaches maximum medical improvement is entitled to impairment income benefits whether or not
the injured worker was disabled for at least seven days." Id. We find Eisler's reasoning persuasive,
and similarly conclude that section 408.161, not section 408.082, establishes the time at which LIBs
become payable. See also Garcia, 893 S.W.2d at 513 (characterizing income benefits as four
separate "tiers").

 Our conclusion is further supported by the fact that section 408.082 addresses accrual
of "income benefits" solely in relation to "disability," see Tex. Lab. Code Ann. § 408.082, yet
section 408.161 defines LIB eligibility without regard to the existence of a disability. "Disability"
is not mentioned in section 408.161, nor do the enumerated injurious conditions in that provision
necessarily constitute disabilities in all cases. "Disability" is defined by the Act as "the inability
because of a compensable injury to obtain and retain employment at wages equivalent to the
preinjury wage." Id. § 401.011(16). As both parties acknowledge, whether a condition qualifying
an employee for LIBs is also a disability would depend upon the nature of the employee's pre-injury
job. These differences indicate that the legislature did not intend for section 408.082 to govern when
LIBs become payable.

 In addition to relying upon section 408.082, the Division emphasizes its desire to
award LIBs retroactively so that employees who do not qualify for such benefits immediately upon
injury can receive the benefit of the annual three-percent compensation increases for each
intervening year following the injury. Id. § 408.161(c). It further notes that we are to construe the
Act liberally to effectuate the legislature's evident goal of ensuring compensation for workplace
injuries. (4) See Barchus v. State Farm Fire & Cas. Co., 167 S.W.3d 575, 578 (Tex. App.--Houston
[14 th Dist.] 2005, pet. denied). However salutary a policy goal this might be, neither the Division
nor this Court can either decrease or increase compensation in a manner inconsistent with the Act. 
Fulton v. Associated Indem. Corp., 46 S.W.3d 364, 369 (Tex. App.--Austin 2001, pet. denied);
Eisler, 981 S.W.2d at 746-47.

 We sustain Mid-Century's issue on appeal. 


CONCLUSION


 Having sustained Mid-Century's issue on appeal, we reverse the judgment of the
district court and render judgment that subsection (b) of rule 131.1 is invalid and in excess of the
Division's statutory authority.



 

 Bob Pemberton, Justice 

Before Chief Justice Law, Justices Pemberton and Waldrop

Reversed and Rendered

Filed: February 24, 2006

1. See Tex. Lab. Code Ann. § 402.001 (West Supp. 2005). 
2. The Texas Register, although listing several interested parties that commented on the rule,
did not identify which party made each comment. The parties that recommended changes to the rule
were the Texas A&M University System, Absolute Dance Studio, and Texas Mutual Insurance
Company. Id. at 10933.
3. The court also acknowledged the axiom that courts should give serious consideration to
an agency construction of a statute within the agency's area of expertise. See Texas Gen. Indem. Co.
v. Eisler, 981 S.W.2d 744, 747 n.2 (Tex. App.--Houston [1st Dist.] 1998, no pet.). 
4. The Division also confuses the point in time when employees become eligible for LIBs
with the time at which such eligibility is administratively or judicially determined to exist. It urges
that our conclusion would deprive injured workers of LIBs during the period in which a claim for
LIBs is pending in the Department or the courts. As previously explained, once LIB eligibility is
judicially or administratively determined, the employee would be entitled to such benefits from the
time at which the injurious condition first entitled the employee for LIBs.