CITY OF HOUSTON, Appellant,

v.

PUBLIC UTILITY COMMISSION OF TEXAS, et al., Appellees.

No. 13376.

Court of Appeals of Texas, Austin.

May 18, 1983.

Rehearing Denied Sept. 7, 1983.

Edward A. Cazares, City Atty., James L. Dougherty, Jr., Senior Asst. City Atty., Houston, for appellant.

Mark White, Atty. Gen., Martha V. Terry, Asst. Atty. Gen., Austin, for Public Utility Com'n of Tex., Jon Dee Lawrence, Dallas, for Southwestern Bell Tel. Co.

Before PHILLIPS, C.J., and SHANNON and POWERS, JJ.

POWERS, Justice.

The City of Houston, Texas appeals a judgment of the district court entered in its judicial review of a final order of the Public Utility Commission, directing Southwestern Bell Telephone Company to file with the Commission a tariff sufficient to generate additional revenue not in excess of $124,-539,000. Included among the charges which the agency order authorizes Bell to "pass through" to certain of its subscribers or ratepayers is $31,736,000, denominated in the order as "Local Gross Receipts," a category representing the total of charges made to Bell by various municipalities in the State, including Houston, which the Commission found to be "taxes" and which Houston contends are "contractual franchise fees" charged Bell for its use of city streets and other facilities. The judgment of the district court affirms the Commission's final order. We will affirm the judgment of the district court.

The Commission's final order includes the following conclusion of law relative to the $31,736,000 in charges made to Bell by various municipalities:

The proposal of [Bell] to pass through local gross receipt taxes is reasonable and should be adopted. These taxes shall be broken out and shown on each customer's bill as a separate item, in such a manner that the customers of each municipality shall pay their proportion of such a levy by their particular municipality. The Commission finds that rural ratepayers

should not be required to pay such levies because no benefits are derived to [sic] them therefrom.

Based upon the distinction thus drawn between telephone ratepayers within and without municipal limits, requiring the former but not the latter to bear the surcharge of $31,736,000, Houston contends that the Commission has created "a new classification of telephone ratepayers," and brings to this Court six points of error which may be summarized as follows:

1. The Commission's final order is affected by an error of law, in violation of the Texas Administrative Procedure and Texas Register Act (APTRA), Tex.Rev.Civ.Stat. Ann. art. 6252–13a, § 19(e)(4) (Supp.1982).

2. The Commission's final order is arbitrary and capricious, in violation of APTRA § 19(e)(6).

In the City's argument under these two points of error, it contends that the Commission erroneously considered the gross receipts charges made by municipalities to be "taxes." While conceding that "taxes" may be allocated solely to ratepayers within the limits of the municipalities which impose them, on the theory that those ratepayers receive the benefit thereof, the City argues that the charges in question are not "taxes" but are rather in the nature of rental for the use of municipal streets and other facilities. Tex.Rev.Civ.Ann. arts. 1175 (1963), 1181 (Supp.1982); *Fleming v. Houston Lighting and Power Co.,* 135 Tex. 463, 143 S.W.2d 923 (1940).

The remainder of the City's points of error complain that the different treatment of ratepayers within and without municipal limits amounts to discrimination in violation of:

3. The statutory prohibitions against discrimination between ratepayers, contained in the Public Utility Regulatory Act (PURA), Tex.Rev.Civ.Stat.Ann. art. 1446c, §§ 38, 45 (1980 and Supp.1982); and

4. The statutory provisions of APTRA § 19(e)(5) and (6), because the provision for different treatment is, respectively, not

supported by substantial evidence and is arbitrary or capricious.

Under the City's points of error five and six, it complains of the geographical division of ratepayers into two classes, those who reside within municipal limits and those who reside without, a division which it contends is violative of the foregoing statutory provisions because it is not based upon "relevant billing factors" and because it is "inconsistent" with previous practices. The City points out that a division between ratepayers drawn along the line of municipal limits is not favored. *City of Texarkana v. Wiggins,* 151 Tex. 100, 246 S.W.2d 622 (1952). Moreover, the City contends that the "pass-through" of the surcharge solely to those ratepayers residing within municipal limits is irrational as a matter of law because the charge is not service related. With respect to the principle of consistency, the City points to the decision in *Texas Alarm and Signal Association v. Public Utility Commission,* 603 S.W.2d 766 (Tex. 1980), mandating consistency in the "mathematical formulas and relevant factors" used to determine telephone rates, claiming the order now under review violates that mandate in three respects: (1) it distorts the practice of "residual rate-making," a term which refers to the policy of maintaining basic telephone service at a low rate by assigning rate increases first to non-basic telephone services, and the remainder, if any, to basic services, a policy approved in *Texas Alarm and Signal Association v. Public Utility Commission, supra;* (2) it deviates from the practice of setting rates according to the value of the service received, referring to the proposition that in Bell's first statewide rate case, it proposed that value of service be the determining factor for establishing local exchange rates for ten classes or groups of ratepayers, a practice departed from by the provision in the order now under review which "passes through" the surcharge to municipal resident ratepayers, irrespective of the ten classes or groups within which they fall; and (3) it abandons the practice of rate uniformity, that is, the practice of having telephone

rates uniform within each of the ten classes or groups.

■ We have referred at some length to the City's points of error because by cross-point[1] Bell contends that several of the City's points of error, as defined by the City's argument thereunder, advance contentions which the City has waived by failing to include them in the motion for rehearing which it filed in the Commission as "a prerequisite to an appeal." Bell's cross-points attack in this regard the following contentions by the City:

1. The gross receipts charges imposed by municipalities are not "taxes" but are, rather,. contractual fees charged Bell for the use of city streets and other facilities; and the Commission's order was affected by error of law and was arbitrary or capricious in reaching the contrary conclusion. We find nothing in the City's motion for rehearing which submits these contentions to the Commission. We do find in the motion for rehearing argument to the effect that the Commission improperly based its order on the benefits received by ratepayers within a municipality, while ignoring the indirect benefits received by other ratepayers from Bell's use of city streets and facilities. The motion does not suggest, however, that such action was "arbitrary or capricious" as contemplated by APTRA § 19(e)(6), a charge which the City did specifically make in its motion for rehearing concerning the matters raised in this Court by way of its argument under points of error five and six, and the contentions of discrimination made therein. Accordingly, we sustain Bell's cross-point in this respect. *Hooks v. Texas Dep't of Water Resources*, 645 S.W.2d 874, 879–83 (Tex.App.1983, writ pending).

2. The rates discriminate between ratepayers who reside within municipal limits and those who do not, as a result of the Commission's unlawful distortion of residual ratemaking, its deviation from its practice of setting rates according to the value of service, and its abandonment of the established practice of maintaining uniform rates within each of ten classes of ratepayers. We find the City's motion for rehearing sufficiently apprised the Commission of its contentions in this respect. Accordingly, we overrule Bell's cross-point and shall consider the City's points of error five and six raising the issue of discriminatory ratemaking.

PURA §§ 38 and 45 provide that rates set by the Commission "shall not be unreasonably preferential, prejudicial, or discriminatory, but shall be sufficient, equitable, and consistent in application to each class of consumers," and that "[n]o public utility may, as to rates ..., make or grant any unreasonable preference or advantage to any corporation or person within any classification, or subject any corporation or person within any classification to any unreasonable prejudice or disadvantage [or] establish or maintain any unreasonable differences as to rates of service either as between localities or as between classes of service."

■ We hold that the surcharge was not unreasonably discriminatory and did not violate the pertinent statutes. Instead, we view the surcharge as a reasonable means which the Commission could permissibly adopt under the statutes to prevent discrimination against ratepayers outside municipal limits and those who reside in municipalities which levied against Bell no gross receipts charge at all, or a charge which was in an amount less than that levied by other municipalities. The surcharge thus eliminates a discrimination that would result from distributing the cost of a municipality's gross receipts charge among all the ratepayers in the State.

The City contends that the effect of the surcharge, which has the result of "passing

---

1. We overrule Bell's additional cross-point that the City lacks "standing" under APTRA § 19(e) and PURA § 69 to maintain suit for judicial review of the Commission's order. The record on appeal does not reflect that Bell raised this contention in the district court by way of a "plea in abatement." *Texas Industrial Traffic League v. Railroad Commission*, 633 S.W.2d 821 (Tex.1982); *Public Utility Commission v. Huber*, 650 S.W.2d 951 (Tex.App.—Austin, 1983).

through" to the ratepayers of a given municipality the costs which Bell incurs by reason of that municipality's gross receipts charge, is to discriminate against those ratepayers who reside within the City. This is based on the theory that because the gross receipts charge represents the value Bell derives from use of the City's streets and other facilities, when Bell is permitted to recover that charge solely from City ratepayers, City ratepayers are forced to bear the entire cost of Bell's use of City streets and facilities, while the benefit of such use accrues as well to non-resident ratepayers as Bell operates both inside and outside the City.

One must observe, however, that ratepayers residing within the City of Houston are the predominant users of Bell's services within the City, and that Houston ratepayers reciprocally use Bell's services without as well as within the City, and in other cities. This is sufficient justification for the Commission's order that each city's charge be recovered from ratepayers within its municipal limits. Moreover, we note that the gross receipts charges are based upon Bell's gross receipts, a measure not shown to be related to Bell's use of City streets and other facilities, as would be the case if the charge were in the nature of rent for such properties or a license fee for their use. Insofar as the record indicates, it is possible that the City's revenue from the gross receipt charges could exceed the reasonable value of the use of its streets and facilities made by Bell, with the result that a distribution of the charges among all Bell ratepayers would result in non-residents subsidizing the general cost of the City's governmental and other activities.

One observes further that in *City of Corpus Christi v. Public Utility Commission,* 572 S.W.2d 290, 296–97 (Tex.1978), the Supreme Court of Texas approved a Commission order which authorized a surcharge by the utility to be recovered from a specific municipality's ratepayers—a procedure designed to allow the utility to recover from the ratepayers the expense of a rate proceeding—a sum which the utility had been required to pay to the municipality. This surcharge is highly analogous to the surcharge authorized by the Commission in the present case, in that both represent costs imposed upon the utility by one municipality alone, and both represent proper cases for distributing such costs to the ratepayers of that municipality alone, although ratepayers outside the municipality may indirectly benefit from the use of that municipality's facilities on the one hand, and rate proceeding expenditures, on the other.

Accordingly, the City's remaining points of error are overruled and what we have said would sufficiently dispose of all the City's points of error even had they been properly preserved for judicial review by having been raised in a motion for rehearing in the Commission.

Finding no error, we affirm the judgment of the trial court.

Affirmed.