# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-04-00688-CV

CenterPoint Energy Entex, Appellant

v.

Railroad Commission of Texas, Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
NO. GN402318, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## O P I N I O N

This appeal concerns whether the Railroad Commission properly refused to allow CenterPoint Energy Entex to charge customers residing outside of Houston-area municipalities a share of the franchise fees Entex paid to the Houston-area municipalities in connection with Entex's use of municipal land and services. The district court affirmed the Commission's order. We reverse the district court's judgment and remand this cause to the district court with instructions to remand to the Commission for further proceedings.

**Facts and Procedural Background**

Entex is a gas utility subject to the Gas Utility Regulatory Act. *See* Tex. Util. Code § 102.001 (West Supp. 2005). The Houston Division of Entex provides natural gas service to the Houston area. The Houston Division comprises several municipalities as well as unincorporated

areas, which are called the "environs." The 283,858 customers living in the Houston environs comprise 36.57% of the customers in Entex's Houston Division.

Before filing this rate request for the Houston environs, Entex reached agreements with several municipalities in the Houston Division regarding Entex's rates, the franchise fees the municipalities would charge for use of municipal land to provide gas services, and how Entex could recover those fees from its customers. *See* Tex. Util Code Ann. § 103.001 (West Supp. 2005) (municipalities have exclusive jurisdiction over gas rates, operations, and services within the municipalities unless they cede that power to the Commission). The franchise fees were calculated based on gas sales within the municipalities. Entex agreed with the municipalities that it would collect the amount paid in franchise fees from *all* Houston Division customers, including those in the environs outside the municipalities. Accordingly, when Entex filed with the Commission a statement of intent to increase gas rates within the Houston environs, it proposed to collect a proportionate share of the franchise fees paid from environs customers. The requested new rates conformed with those set by the agreements with the municipalities. No opposition was filed.

The Commission's hearings examiners proposed, and the Commission adopted, rates that do not allocate a share of the municipal franchise fees to be borne by Entex's Houston environs customers. Entex filed a motion for rehearing, arguing that the necessarily implied requirement that municipal residents bear the full brunt of the franchise fees marked a change from previous orders not supported by the record. That motion was denied.

Entex sought judicial review. The Commission filed a plea to the jurisdiction, arguing that Entex lacked standing to challenge the Commission's refusal to allow Entex to recover

2

a share of municipal franchise fees from non-municipal customers because Entex was not aggrieved by the decision. After denying the plea to the jurisdiction regarding the fee issue, the district court affirmed the Commission's order.

Entex appeals, arguing that requiring it to collect a municipality's franchise fee only from customers in that municipality is not supported by substantial evidence in the record and marks a change from previous orders. Entex also contends that, by this order, the Commission unreasonably discriminated within customer classes, rendered a decision in violation of the substantial evidence rule, abused its discretion, acted arbitrarily and capriciously, and violated Entex's due process rights. The Commission denies these contentions and argues that, because the Commission's decision is revenue neutral for Entex—that is, it affects only which customers pay a share of the franchise fees rather than whether the fees are recouped by Entex—Entex is not aggrieved by the decision and lacks standing to complain about it.

**Standing and jurisdiction**

We review de novo whether the trial court had jurisdiction, taking the pleadings as true and construing them in favor of the pleader as well as considering evidence relevant to the jurisdictional inquiry. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226-28 (Tex. 2004). Standing is a component of subject-matter jurisdiction and is thus essential to a court's power to hear a case. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444-45 (Tex. 1993); *Texas Lottery Comm'n v. Scientific Games Intern., Inc.*, 99 S.W.3d 376, 380 (Tex. App.—Austin 2003, pet. denied). A person who has exhausted available administrative remedies and is aggrieved by an agency order in a contested case is entitled to judicial review of that order.

3

Tex. Gov't Code Ann. § 2001.171 (West 2000); *see Hooks v. Texas Dep't of Water Res.*, 611 S.W.2d 417, 419 (Tex. 1981). To be aggrieved, a party must have a justiciable interest—that is, the agency's order must injure or threaten the party specifically and differently from the public at large. *See Hooks*, 611 S.W.2d at 419; *Scientific Games*, 99 S.W.3d at 380. The Commission does not assert that Entex has failed to exhaust its administrative remedies.

The record shows that Entex may be aggrieved by the Commission's decision in one of two ways: it may not be able to recover from municipal customers all of the franchise fees assessed and, even if it does, that recovery from only a portion of the customers served by the facilities the fees support could put Entex at a competitive disadvantage in the energy market among municipal customers. As the hearings examiners noted, Entex's agreements with the municipalities call for franchise fees to be collected proportionately from all of its customers in the Houston Division, which includes environs customers. Accordingly, the City and other municipalities could resist any attempt by Entex to recover all of the fees from their residents. If instead Entex is allowed to recover all of the fees from municipal residents, that will increase the costs paid by those customers. Entex vice president George Hepburn testified by affidavit that this increased cost would impair the cost-competitiveness of Entex's service in the Houston market. Entex faces competition from unregulated electric utilities and also, at least in Missouri City, another gas utility.

Although the Commission produced evidence that Entex might recover all of the franchise fees from municipal customers, it did not conclusively prove either (1) that Entex would recover all of the fees or (2) that Entex would not be placed at a competitive disadvantage by doing so. Entex's pleadings and Hepburn's testimony describe at least a threatened harm from the agency

4

order that is unique to Entex. This provides standing for Entex and subject-matter jurisdiction for the district court below and this Court. Whether Entex is entitled to relief is a different question.

**Standard of Review**

Entex challenges the Commission's refusal to allow it to recoup from environs customers a portion of the franchise fees it paid to municipalities. Prefatory to that review, we must determine what standard of review to apply. The parties dispute whether the franchise fee issue under review arises from a ratemaking proceeding or an ad hoc rulemaking. The applicable standards of review are substantial evidence and abuse of discretion, respectively. Both sides contend that they prevail under either standard.

The two types of decisions are not mutually exclusive. Gas rates are set in contested-case hearings "in which the legal rights, duties, or privileges of a party are to be determined by a state agency after an opportunity for adjudicative hearing." *See* Tex. Gov't Code Ann. § 2001.003(1) (West Supp. 2005). Ad hoc rulemaking occurs when the agency makes a determination that has implications beyond the instant parties, but prefers not to make a formal rule because the agency may not have had sufficient experience with a particular problem to support making a rule or because the problem is so specialized and varying in nature as to be impossible of capture within the boundaries of a general rule. *See City of El Paso v. Public Util. Comm'n*, 883 S.W.2d 179, 188-89 (Tex. 1994). An ad hoc rule is an agency statement that interprets, implements, or prescribes agency law or policy. *West Tex. Util. v. Office of Pub. Util. Counsel*, 896 S.W.2d 261, 272 (Tex. App.—Austin 1995, no pet.). If the decision made during a ratemaking proceeding reflects a policy choice that has not been committed to a formal rule, it can be considered an ad hoc rulemaking. *See Texas Ass'n of Long*

5

*Distance Tele. Cos. (TEXALTEL) v. Public Util. Comm'n*, 798 S.W.2d 875, 886 (Tex. App.—Austin 1990, writ denied).

The decision at issue here appears to be purely ratemaking. Although the finding under review is broadly stated and parties in similar ratemaking cases may look to this order for guidance, the hearings examiners expressly stated in their proposal for decision that collecting a share of municipal franchise fees from environs customers was unreasonable "in this particular circumstance." Tex. R.R. Comm'n, *Statement of Intent filed by Centerpoint Energy Entex to Change Rates in the Environs of the City of Houston, Tex.*, Gas Utils. Docket No. 9469 at 10 (May 20, 2004) (proposal for decision). The Commission's final order does not set down a rule that no gas utility could show that such a fee-collection strategy is reasonable. The decision appears to be limited to this rate case and not based on broader policy concerns.

Whether viewed as ratemaking or ad hoc rulemaking, the result of our review of the Commission's decision is the same. In the interest of efficiency, we will review the Commission's decision under both standards.

**Ratemaking**

We review the Commission's decision in a ratemaking proceeding to determine whether it is supported by substantial evidence. The appealing party bears the burden of showing a lack of substantial evidence. *Sportscoach Corp. of Am. v. Eastex Camper Sales, Inc.*, 31 S.W.3d 730, 733 (Tex. App.—Austin 2000, no pet.). Final orders of the Commission are presumed to be prima facie valid and subject to review under the substantial evidence rule. *City of El Paso*, 883 S.W.2d at 185. We review the Commission's legal conclusions for errors of law and its findings of

6

fact for support by substantial evidence. *See* Tex.Gov't Code Ann. § 2001.174 (West 2000); *Heat Energy Advanced Tech., Inc. v. W. Dallas Coalition*, 962 S.W.2d 288, 294-95 (Tex. App.—Austin 1998, pet. denied). To constitute substantial evidence, the evidence in its entirety must be sufficient that reasonable minds could have reached the conclusion that the agency must have reached to justify the disputed action. *Texas State Bd. of Dental Exam'rs v. Sizemore*, 759 S.W.2d 114, 116 (Tex. 1988). The evidence in the record may preponderate against the agency's decision and still provide a reasonable basis for the decision and satisfy the substantial evidence standard. *Nucor Steel v. Public Util. Comm'n*, 168 S.W.3d 260, 267 (Tex. App.—Austin 2005, no pet.). We may not substitute our judgment for that of the agency on questions committed to agency discretion. Tex. Gov't Code Ann. § 2001.174; *Gulf States Utils. Co. v. Public Util. Comm'n*, 947 S.W.2d 887, 890 (Tex. 1997).

When setting rates, the Railroad Commission is "vested with all the authority and power of this state to ensure compliance with the obligations of gas utilities" and may establish and regulate rates charged by the utilities in areas outside municipalities. Tex. Util. Code Ann. §§ 103.001 (municipalities) & 104.001 (other) (West 1998). The Commission must ensure that the rates are just and reasonable. *Id*. § 104.003(a) (West 1998). "A rate may not be unreasonably preferential, prejudicial, or discriminatory but must be sufficient, equitable, and consistent in application to each class of consumer." *Id*. Further, a gas utility may not:

(1) grant an unreasonable preference or advantage concerning rates or services to a person in a classification;

(2) subject a person in a classification to an unreasonable prejudice or disadvantage concerning rates or services; or

(3) establish or maintain an unreasonable difference concerning rates of services between localities or between classes of service.

*Id*. § 104.004 (West 1998).

The Commission's rejection of Entex's fee assessment on environs customers is based on the finding of fact that "[s]hifting franchise fees from municipal customers to environs customers is unreasonable." Tex. R.R. Comm'n, *Statement of Intent Filed by Centerpoint Energy Entex to Change Rates in the Environs of the City of Houston, Tex.*, Gas Utils. Docket No. 9469 at 3, finding 33 (June 8, 2004) (final order). The conclusion of law reached based on this finding is the Commission's approval of Entex's requested rates except for the recovery of the franchise fees from environs customers. *Id*. at 4, conclusion 6. This finding and conclusion are adopted verbatim from the findings and conclusions proposed by the hearings examiners.

This finding only references the utility code standard that rates be reasonable. *Id*. There are no other findings underlying this decision that Entex's request was unreasonable.[1] The Commission's order does not satisfy the requirement that "[f]indings of fact, if set forth in statutory language, must be accompanied by a concise and explicit statement of the underlying facts supporting the findings." Tex. Gov't Code Ann. § 2001.141(d) (West 2000).

---

[1] The Commission made one other finding on the franchise fee issue: "Entex proposed to require environs customers, who live outside of the corporate limits of a municipality, to pay the franchise fees incurred through the sale of gas to customers within the corporate limits of the municipality." Tex. R.R. Comm'n, *Statement of Intent Filed by Centerpoint Energy Entex to Change Rates in the Environs of the City of Houston, Tex.*, Gas Utils. Docket No. 9469 at 3, finding 32 (June 8, 2004) (final order). Entex does not challenge this restatement of its proposal.

The proposal for decision provides the only explanation by the Commission for the finding that requiring environs customers to bear a share of the fees is unreasonable. We may consider the examiners' recommendations in light of the pertinent evidence, and they are entitled only to such value as they intrinsically command when agency decisionmakers depart from them. *See Exxon Corp. v. Railroad Comm'n*, 993 S.W.2d 704, 709-10 (Tex. App.—Austin 1999, no pet.). The examiners wrote:

> Presumably, the franchise fees paid by the residents provide funds for city services within the municipal boundaries.
>
> It is not reasonable for Entex to shift the burden of paying those fees, at the request of the cities, to environs customers. Specifically, it is not reasonable to shift those costs to residents outside of the municipal boundaries who derive ***no benefit*** from the franchise fees. Those customers derive no benefit from the municipal services that are funded by franchise fees. As a result, in this particular circumstance, it does not appear reasonable to require an environ customer to pay an allocated franchise fee applicable to the communities of Bellaire, Hedwig Village, Piney Point Village (all of which are encompassed by the City of Houston), and the City of Houston. Finally, it should be noted that shifting those costs would result in a larger increase in rates to the environs customer than to municipal customer.

(Emphasis in original.) The hearings examiners rejected Entex's arguments that it should be allowed to recoup these fees from environs customers because the municipal franchise fees enable Entex to use public lands to install and maintain infrastructure for providing natural gas service, that neither the infrastructure nor the base load ends at the city limits, that the mains metering equipment and other related facilities are an indivisible system that provides a benefit to all city and environs customers, and that all customers should share in paying the fees that permit the system to provide them gas. The examiners also rejected the applicability of the Public Utility Commission's practice

9

of allowing such collection of municipal franchise fees outside the municipalities assessing such fees on electric utilities. The examiners dismissed this precedent because the electric utility market is deregulated unlike the gas market. The examiners stated that they knew of no other gas utility recovering municipal fees from environs customers. The examiners also noted that franchise fees are calculated based on gross revenues from sales within the municipal boundaries.

In support of the finding that charging environs customers a share of the franchise fee is unreasonable, the Commission cites Entex Senior Counsel Charles Harder's testimony that the fees are based on a percentage of the gross receipts of sales within the municipal boundaries and that the cities use the fees received for non-gas-related city services. The Commission argues that this case is controlled by this Court's previous holding that recouping fees only from municipal customers is reasonable when a city bases its franchise fees on gross receipts in the municipality. *See City of Houston v. Public Util. Comm'n*, 656 S.W.2d 107, 111 (Tex. App.—Austin 1983, writ ref'd n.r.e.) (reviewing rates set in regulated telephone utility market). This Court wrote that the city's choice to base the franchise fee on gross receipts rather than as a flat rental fee indicated that something other than rental was involved. *Id*. This Court also wrote that city residents were the predominant users of the infrastructure placed in the city. *Id*. This Court stated:

> Insofar as the record indicates, it is possible that the City's revenue from the gross receipt charges could exceed the reasonable value of the use of its streets and facilities made by Bell, with the result that a distribution of the charges among all Bell ratepayers would result in non-residents subsidizing the general cost of the City's governmental and other activities.

*Id*.

However, we are cited to no evidence that conditions exist here making the recoupment of fees from environs customers unreasonable. We are not cited to any evidence that the fees collected will exceed the reasonable value of the use of the municipalities' property. Instead, the record contains a letter from the City of Houston's legal department—filed after the proposal for decision but before the final order—asserting that the City of Houston charges fair market rental value for the municipal property used by Entex. We are not cited to any evidence of what city services the proceeds of the franchise fees support or any evidence that environs customers do not benefit from those services.

Most critically, there is no evidence that environs customers do not benefit from Entex's *payment* of the fees for which it seeks recoupment. The only evidence in the record is to the contrary. In his supplemental testimony, Harder quotes an Entex response to the Commission's request for data in which Entex explains that the franchise fees are assessed and collected so that Entex

> may use streets, alleys, and public right-of-ways to install and maintain its infrastructure to provide natural gas service. However, neither the infrastructure nor the base load served by Entex end at the boundary lines of each city within the Houston Division. Entex's mains, metering equipment, and other related facilities integral to the provision of natural gas service constitute an indivisible system that extends throughout the Houston Division, and as such, provides a benefit to all city and environs customers within the Houston Division.

Harder opined that the use of gross receipts on sales within the municipalities to calculate the fees did not change the purpose for which the fees were collected—to pay for the use of the

11

municipalities' land—and did not render the collection of such fees a tax on environs.  Harder also wrote the following:

> The mains, service lines and other utility facilities that are placed in the streets and rights-of-way allow Entex to provide natural gas service to customers inside the city, or cities, as well as to customers that are located in the environs.  The franchise fee payments by Entex to the respective cities represent reasonable and necessary expenses of the Company that are directly associated with assets used to provide natural gas service to customers in the cities and in the environs.

This evidence is uncontroverted.  Stated differently, there is no evidence in the record to support a contrary finding.

An agency may accept or reject the testimony of witnesses.  *Southern Union Gas v. Railroad Comm'n*, 692 S.W.2d 137, 141 (Tex. App.—Austin 1985, writ ref'd n.r.e.).  An agency is not obliged to accept opinion testimony from an expert—even if it is the sole evidence on the issue and is uncontradicted and unimpeached.  *Reliant Energy, Inc. v. Public Util. Comm'n*, 153 S.W.3d 174, 191 (Tex. App.—Austin 2004, pet. filed) (nevertheless reversing rejection of non-opinion testimony).  But an agency must provide a basis for its rejection of uncontradicted, unimpeached testimony that is neither inherently improbable or conclusory.  *Cities of Port Arthur, Port Neches, Nederland & Groves v. Railroad Comm'n*, 886 S.W.2d 266, 270-72 (Tex. App.—Austin 1994, no pet.).  The Commission can reject such uncontradicted evidence if it explains or makes findings that permit courts to review the reasonableness of that rejection, but a failure to explain can result in reversal.  *Id*. at 271-72.

12

Here, the Commission failed to explain its implicit rejection of Harder's uncontroverted testimony. The Commission also failed to provide its basis for adopting a contrary conclusion. The hearings examiners did not explain their conclusion that environs customers received no benefit from the infrastructure on municipal lands made possible in part by the franchise fee payment. The Commissioners did not explain why it is unreasonable for Entex to recover a portion of the fees paid from environs customers. There was no evidentiary showing that the fees paid by Entex were not reasonably related to Entex's use of city property for its integrated system. There is no explanation or support in the record for refusing to allow Entex to recover a share of the municipal franchise fees that benefit the environs customers. Even if the hearings examiners and the Commission could reject without explanation the uncontroverted evidence that payment of the fees benefits the environs customers by enabling Entex to provide gas service to the environs through the rented municipal property, neither the hearings examiners nor the Commission refer to any evidence supporting their contrary conclusions that the payment of franchise fees provides no benefit to environs customers and, hence, that recouping those fees from environs customers is unreasonable.

By this review, we do not invade the Commission's policy-making purview. Rather, we simply fulfill the mandate that we determine whether the Commission's decision is supported by substantial evidence. *See id.* at 270-71; *see also* Tex. Gov't Code Ann. § 2001.174. The Commission has not explained the basis for its rejection of the uncontradicted evidence that environs customers benefit from the payment of municipal franchise fees. Thus, we cannot ignore that uncontradicted evidence when reviewing the sufficiency of the evidence. *See Cities of Port Arthur*,

13

886 S.W.2d at 271. The Commission and the hearings examiners did not set out facts or policy reasons underlying the decision that Entex's requested charge is unreasonable. *See* Tex. Gov't Code Ann. § 2001.141(d). The order does not supply the necessary basis for establishing a franchise fee recovery structure that favors environs customers at the expense of municipal customers. *See* Tex. Util. Code Ann. § 104.004. We conclude that the record lacks substantial evidence to support the finding and conclusion that assessing a share of the municipal franchise fees against environs customers is unreasonable.

**Ad hoc rulemaking**

We reach the same conclusion if we treat the issue under review as an ad hoc rulemaking. The appropriate standard of review for an appellate court reviewing an ad hoc rule is not whether the agency's policy choice is supported by substantial evidence, but whether the choice was arbitrary and capricious. The Commission argues that allocating recovery of expenses is a policy decision left to the Commission's discretion and is not subject to evidentiary review. *See West Tex. Util. v. Office of Pub. Util. Counsel*, 896 S.W.2d 261, 271 (Tex. App.—Austin 1995, no pet.).

In *WTU*, this Court upheld the assessment of a surcharge on two sets of cities who had intervened in ratemaking proceedings before the Public Utility Commission. *Id.* at 270-71. The Commission defended assessing the surcharge by finding that it was fair to allocate the costs only to customers in the intervenor cities because (1) customers in other municipalities had no opportunity to participate in the intervenor cities' decision-making concerning intervention, (2) the surcharge is

14

an effective way to ensure that such expenses are reasonable and not duplicative, and (3) the interests of nonintervenor cities' resident customers may not have coincided with the interests of those in other cities. *Id*. at 271. This Court deemed the Commission's decision a policy determination that constituted an ad hoc rulemaking. *Id*. at 272-73. Therefore, the court reviewed the decision only to discern whether it was arbitrary, capricious, and without a rational basis. *Id*. at 273. This Court affirmed after finding the decision reasonable, based on a review of the records of the intervention. *Id*.

This case is distinct from *WTU* because of the nature of the order and the proceedings. The findings and conclusions in this case provide no basis on which to assess the rationality of the decision. In *WTU*, the Commission explained its reasons for assessing the surcharge against customers in the two groups of cities instead of against all of the customers. *See id*. at 271. Here, the Commission deemed recouping the franchise fee payments from all customers "unreasonable" without explanation. More critically, the record in the *WTU* case showed that the municipalities that were assessed the surcharge created costs by intervening in the litigation that the other municipalities chose not to incur (and may not have agreed with or benefitted from), and may have exacerbated the costs by duplicating efforts unnecessarily. *Id*. Here, there is no evidence that assessing the franchise fees on all customers is unreasonable. The only evidence is that the franchise fees permit installation and maintenance of distribution infrastructure that benefits municipal and environs customers alike. Based on this record, we conclude that the Commission's finding regarding spreading the cost of the franchise fees to environs customers is arbitrary and capricious.

## Conclusion

We conclude that the record does not contain substantial evidence to support the Commission's finding and conclusion that it is unreasonable for Entex to recover a share of the municipal franchise fees from environs customers. We also conclude that the Commission's action, if viewed as an ad hoc rulemaking, is arbitrary and capricious on this record. Accordingly, we reverse the judgment of the district court and remand the cause to that court with instructions to remand the cause to the Commission for further proceedings consistent with this opinion.

_____

G. Alan Waldrop, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Filed:   April 28, 2006

Reversed and Remanded