# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00341-CV

Antioch St. Johns Cemetery Company d/b/a American Memorial Park, Grand Prairie, Texas; Gerald Weatherall; and Beverly Randall-Weatherall, Appellants

v.

Texas Department of Banking Commissioner, Appellee

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT NO. D-1-GN-14-000367, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Antioch St. Johns Cemetery d/b/a American Memorial Park, Grand Prairie, Texas ("Antioch"); Gerald Weatherall; and Beverly Randall-Weatherall filed suit in Travis County district court seeking judicial review of an order signed by the Commissioner of the Texas Department of Banking assessing administrative penalties in the amount of $56,000 for violations of certain provisions of the Texas Health and Safety Code and Texas Finance Commission rules governing the operation of perpetual care cemeteries. *See* Tex. Health & Safety Code §§ 711.001-.062 (general provisions relating to cemeteries), 712.001-.068 (perpetual care cemeteries); 7 Tex. Admin. Code § 26.2 (2016) (Texas Dep't of Banking, What Records am I Required to Maintain?). The trial court affirmed the Commissioner's order. We will affirm.

## BACKGROUND

In 2009, Gerald Weatherall and Beverly Randall-Weatherall purchased and began operating Antioch St. Johns Cemetery d/b/a American Memorial Park, Grand Prairie, a "perpetual care cemetery."[1]  The Texas Department of Banking, a state agency operating under the oversight of the Finance Commission of Texas, has enforcement authority over perpetual care cemeteries. *See* Tex. Health & Safety Code §§ 712.0441 (after notice and opportunity, the commissioner may impose administrative penalties for violations of chapter 712), .001 ("commissioner" in chapter 712 means the Banking Commissioner of Texas).  The Banking Commissioner, after notice and opportunity for hearing, has the authority to impose an administrative penalty on a person who violates chapters 711 or 712 of the Health and Safety Code, a final order of the Commissioner, or a rule of the Texas Finance Commission.  *See id.* §§ 711.053, 711.055, 711.056, 712.0441, 712.0442.  The administrative penalty assessed may not exceed $1,000 for each day the violation occurs.  *Id.* §§ 711.055, 712.0441.

In September 2011, the Department conducted an onsite examination of Antioch's operations through June 2011 and identified the following alleged violations:

- failure to accurately identify the plots in which remains were interred in Antioch's interment records;

- failure to record the final disposition of cemetery plot purchase agreements on Antioch's historical contract register;

---

[1]  A "perpetual care cemetery" is defined as "a cemetery for the benefit of which a perpetual care trust fund is established" for maintenance of the cemetery.  *See* Tex. Health & Safety Code § 711.001(24).  "Perpetual care" means the "maintenance, repair, and care of all places in the cemetery."  *Id.* § 711.001(23).

- failure to maintain separate property files in the names of purchasers of cemetery plots;

- failure to maintain a financial statement that substantiated Antioch's use of perpetual care trust fund income;

- failure to accurately calculate the amount of perpetual care funds to be deposited;

- failure to accurately deposit required perpetual care funds no later than the 20th day after the end of the month in which the original cemetery plot purchase agreement was paid in full;

- failure to disclose on the cemetery plot purchase agreements the correct amount of perpetual care funds to be deposited in the perpetual care trust fund;

- failure to maintain monthly recapitulations of all interment rights issued;

- selling cemetery property prior to filing accurate plat maps with the county clerk's office; and

- failure to issue conveyance documents as required on paid-in-full cemetery property and to file those conveyance documents in Antioch's office.

*See id.* §§ 711.003(4), 711.034, 711.038; 712.028(a), 712.029. After a follow-up "limited scope" audit, the Department identified an additional alleged violation of failing to maintain Antioch's minimum capital requirement. *See id.* § 712.0037. The Department notified Antioch of its findings in a Report of Examination provided in April 2012. According to the Department, Antioch did not correct the violations by the 31st day after it received the Report of Examination.

In March 2012, Antioch's certificate of authority to operate a perpetual care cemetery was due for renewal. *See id.* § 712.0032 (corporation must hold certificate of authority issued under chapter 712 to operate perpetual care cemetery). As a condition of renewal, a certificate holder must

meet all the requirements that apply to a new applicant. *See id.* § 712.0037(a) (renewal of certificate of authority). Some of the conditions that apply to a new applicant are that it have the "business ability, experience, character, financial condition, and general fitness" to warrant the public's confidence. *See id.* § 712.0034(b)(1). The issuance of the certificate of authority must also be in the public interest. *Id.* § 712.0034(b)(3). Antioch's internally prepared financial statement as of December 31, 2011 revealed that it had a negative $21,700 equity position. For that reason, the Department determined that Antioch did not have the financial condition to warrant renewal of its certificate of authority.

Because of Antioch's financial condition and what it considered to be outstanding violations, the Department did not renew Antioch's certificate of authority. Despite the non-renewal, however, Weatherall continued to operate Antioch without a certificate of authority. In May 2012, the Commissioner issued an emergency order requiring Weatherall and Randall-Weatherall to, among other things, cease and desist from all cemetery operations except for burials of persons who owned cemetery plots as of the date of the order. *See id.* § 712.0441(e) (commissioner may issue order to cease and desist if violation has not been corrected within 30 days after receipt of written notice from commissioner of violation). Antioch was also ordered to provide recorded documentation to the Department of any allowed burial it performed within two days of such burial. According to the Department, Antioch violated the cease and desist order by performing a burial in June 2012 and failing to send the required documentation to the Department.

In June 2013, the Department held a hearing to determine whether to assess administrative penalties against Antioch, Weatherall, in his individual capacity and as Antioch's

4

President, and Randall-Weatherall, as Antioch's Vice-President. After the hearing, the Administrative Law Judge (ALJ) prepared a Proposal for Decision that included his findings that the condition of the cemetery property had deteriorated after Weatherall began operating Antioch, specifically that the maintenance of the property was very poor, there was inadequate signage at the entrance, sections within the cemetery were not adequately marked, and graves had collapsed, creating deep sink holes. The ALJ also found numerous deficiencies in Antioch's records of the locations of burials and the identity of persons interred in cemetery plots and that the evidence supported the numerous violations identified by the Department in its Record of Examination, including that Weatherall violated the Commissioner's cease and desist order.

The ALJ found that although Weatherall had attempted to address violations that were brought to his attention, the failure to correct all of the violations and the continual frequent repetition of the several types of violations during the time he was responsible for Antioch's operations established a pattern of wilful disregard for the requirements of the law applicable to perpetual care cemeteries. The ALJ found:

> The continued occurrences of violations and Mr. Weatherall's actions concerning the operations of the cemetery and the cemetery company were initially more the result of ignorance of the legal requirements and later, of combinations of an inability to accomplish and inattention to the accomplishment of the legal requirements. Mr. Weatherall eventually made up the shortages in the Perpetual Care Trust Fund after the department staff notified him and demanded compliance. He attempted to address the complaints. Some of the record-keeping deficiencies were corrected after notice and demand from the staff. He ultimately gave up the cemetery and cemetery company as a result of financial insolvency. He has continued to pay for some maintenance of the cemetery property.

5

The ALJ concluded that the evidence presented supported the assessment of an administrative penalty in the amount of $70,000 against Weatherall, as the person responsible for Antioch's operations, for the violations.[2]  Based on the evidence, including the facts that the Department had already acted on the violations by not renewing the certificate of authority, that the cemetery company was no longer in business, and that Weatherall and Randall-Weatherall no longer owned the cemetery property or conducted cemetery operations, the ALJ recommended an administrative penalty not to exceed $56,000.

The Commissioner adopted the ALJ's findings of fact and conclusions of law in their entirety and concluded that an administrative penalty in the amount of $56,000 was justified and appropriate under the relevant factors.  The Commissioner assessed a $56,000 administrative penalty

---

[2]  The Commissioner adopted the ALJ's finding that:

> Gerald Weatherall, Sr., was president of the cemetery company and exercised an active role as the person and officer who was responsible for the operations of the cemetery and the cemetery company.

The Commissioner also adopted the ALJ's conclusion that:

> Gerald Weatherall, Sr., is the person who is responsible, individually and in his capacity as former president of Antioch St. James Cemetery d/b/a American Memorial Park, for the violations of law that are set forth in these Findings of Fact and Conclusions of Law.

Weatherall does not challenge that finding or conclusion.

6

against Antioch and Weatherall, in his individual capacity and in his capacity as Antioch's former President.[3] Antioch, Weatherall, and Randall-Weatherall timely filed a motion for rehearing asserting:

> To the extent that the Movants disagree with the penalties assessed against the individual movants in their individual capacities, and that such penalties do not comport with the finding of facts by the Administrative Law Judge and the rules regarding governance of cemeteries for the state of Texas, Movants request a rehearing in this cause.

The Commissioner overruled the motion for rehearing and this appeal followed. In one issue, Antioch, Weatherall, and Randall-Weatherall assert that "the [ALJ]'s findings of fact and conclusions of law and penalties assessed against the Appellants for violations of the Texas Health and Safety code" were not "warranted with the facts submitted to the ALJ during a contested case hearing."

## DISCUSSION

Section 2001.174 of the Texas Government Code provides the standard for judicial review of the Commissioner's order. *See* Tex. Gov't Code § 2001.174. Under this standard we may not, with respect to questions committed to its discretion, substitute our judgment on the weight of the evidence for that of the agency. *Id.* We must, however, reverse an order if it prejudices substantial rights because its findings, inferences, conclusions, or decisions (1) violate a

---

[3] The Commissioner agreed that although Randall-Weatherall was Antioch's Vice-President, she did not have an active role in or have responsibility for the cemetery operations or the cemetery company and therefore he did not assess, or order her to pay, any administrative penalties.

constitutional or statutory provision; (2) exceed statutory authority; (3) were made through unlawful procedure; (4) were affected by other error of law; (5) are not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (6) are arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion. *Id.* An agency order is presumed to be valid and is supported by substantial evidence if the evidence in its entirety is sufficient to allow reasonable minds to have reached the conclusion the agency must have reached to justify the disputed action. *Texas State Bd. of Dental Exam'rs v. Sizemore*, 759 S.W.2d 114, 116 (Tex. 1988). The party challenging the order has the burden of demonstrating a lack of substantial evidence. *CenterPoint Energy Entex v. Railroad Comm'n of Tex.*, 213 S.W.3d 364, 369 (Tex. App.—Austin 2006, no pet.) (citing *City of El Paso v. Public Util. Comm'n*, 883 S.W.2d 179, 185 (Tex. 1994)).

On appeal, Antioch, Weatherall, and Randall-Weatherall do not challenge any of the Commissioner's findings that there were numerous and persistent violations of various provisions of the Texas Health and Safety Code.[4] Nor do they challenge the finding that Weatherall violated the cease and desist order. Rather, they maintain that, because the Commissioner found that Weatherall had addressed the Department's concerns regarding the violations of the Health and Safety Code and repaid the perpetual cemetery trust fund, it could not also find that Weatherall showed a "pattern of wilful disregard for the requirements of the law that applies to perpetual care

---

[4] Moreover, having failed to challenge any specific findings of fact in the motion for rehearing, any such complaints have been waived. *See BFI Waste Sys. of N. Am. v. Martinez Envt'l Group*, 93 S.W.3d 570, 578 (Tex. App.—Austin 2002, pet. denied) (to preserve error motion for rehearing must set forth particular finding of fact, conclusion of law, ruling, or other agency action which complaining party asserts was error and legal basis upon which claim of error rests).

cemeteries." Thus, according to Weatherall, the Commissioner's findings are not supported by the evidence and the assessment of an administrative penalty was arbitrary and capricious.

As previously set forth, findings that the evidence at the hearing established numerous and persistent violations of laws and regulations governing perpetual care cemeteries have not been challenged on appeal. The Commissioner found:

> Although Mr. Weatherall has attempted to address violations that were brought to his attention, the failure to correct all of the violations and the continual frequent repetition of the several types of violations throughout the time he was responsible for the operations of the cemetery company establishes a pattern of wilful disregard for the requirements of the law that applies to perpetual care cemeteries.

Thus, the Commissioner did not, as Weatherall suggests, find that Weatherall "addressed the agency's concerns." Rather, it expressly found that although he *attempted* to address violations brought to his attention, he did not correct all the violations and continued to repeat those violations throughout the time he was responsible for Antioch's operations. Moreover, Texas Health and Safety Code section 712.0442 provides that corrected violations may be included in determining whether a pattern of wilful disregard exists. *See* Tex. Health & Safety Code § 712.0442(b). Thus, the fact that Weatherall corrected some of the violations identified by the Department would not preclude the Commissioner's finding that his conduct established a pattern of wilful disregard for the statutory requirements applicable to perpetual care cemeteries. The Commissioner's Final Order reveals that he did in fact consider mitigating factors and assessed a $56,000 penalty instead of the $70,000 penalty that the ALJ found was supported by the evidence under the provisions of Health and Safety Code sections 711.055, 711.056, 712.0441, and 712.0442. These factors included that

9

(1) the Department had already acted on the violations by not renewing the certificate of authority, (2) Antioch was no longer in business, and (3) Weatherall and Randall-Weatherall no longer owned the cemetery property or conducted cemetery operations. The penalty was supported by the evidence and its assessment was not arbitrary or capricious.

Antioch, Weatherall, and Randall-Weatherall also argue that the Commissioner committed an error of law by assessing penalties against Weatherall and Randall-Weatherall individually for Antioch's liability. As an initial matter, the Commissioner did not assess penalties against Randall-Weatherall at all. For his part, Weatherall claims that, as Antioch's President, he is shielded from individual liability for administrative penalties assessed against Antioch, a corporation, unless the evidence establishes that the corporation has been used to perpetuate a fraud. *See* Tex. Bus. Orgs. Code § 21.223(a) (owner of corporation not liable for certain obligations of corporation), (b) (owner of corporation may be liable for corporation's contractual obligations or any matter relating to or arising from those obligations if it is demonstrated that owner caused corporation to be used for purpose of perpetrating and did perpetrate actual fraud on obligee primarily for direct personal benefit of owner). But the Department did not seek to impose liability on Weatherall on the theory that he could be held individually liable for Antioch's corporate conduct. Instead, the Department sought administrative penalties against Weatherall individually based on his own personal conduct. The Commissioner found that Weatherall himself violated various provisions of the Texas Health and Safety Code and that he violated the Commissioner's cease and desist order. The Commissioner assessed penalties against him for that conduct. Weatherall has not challenged

10

the Commissioner's findings in that regard, nor does he argue in this appeal that the Commissioner did not have the authority to assess penalties against him based on his own violations of the statute.

## CONCLUSION

Having concluded that the Commissioner's assessment of civil penalties against Antioch and against Weatherall individually was supported by substantial evidence, was not arbitrary or capricious, and was not in contravention of the protection from liability afforded by the Business Organizations Code, we overrule the sole appellate issue and affirm the trial court's judgment.

_____

Scott K. Field, Justice

Before Chief Justice Rose, Justices Pemberton and Field

Affirmed

Filed:   June 30, 2016

11