# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-16-00068-CV

---

**Sweeten Truck Center, L.C., Appellant**

**v.**

**Volvo Trucks North America, a Division of Volvo Group of North America, LLC; Texas Department of Motor Vehicles; Board of the Texas Department of Motor Vehicles; Laura Ryan, in her Official Capacity as Chair of the Board of the Texas Department of Motor Vehicles; Whitney Brewster, in her Official Capacity as Executive Director of the Texas Department of Motor Vehicles; and Daniel A. Vitia, in his Official Capacity as Director of the Motor Vehicle Division of the Texas Department of Motor Vehicles, Appellees**

---

**DIRECT APPEAL ON REMOVAL FROM THE DISTRICT COURT OF TRAVIS COUNTY 201ST JUDICIAL DISTRICT, NO. D-1-GN-16-000204**

---

## M E M O R A N D U M   O P I N I O N

Sweeten Truck Center, L.C. (Sweeten) sought judicial review in the district court of a final order of appellee Board of the Texas Department of Motor Vehicles approving the decision of appellee Volvo Trucks North America, a Division of Volvo Group of North America, LLC (Volvo Trucks) to modify its franchise agreement with Sweeten. Before any proceedings occurred in the district court, Volvo Trucks removed the case to this Court. *See* Tex. Occ. Code § 2301.751(b). In three issues, Sweeten contends that the Board erred in failing to consider "all existing circumstances" in determining whether "there is good cause" to modify Sweeten's franchise agreement and in refusing to consider the impact of a possible additional Volvo Trucks dealership on Sweeten and the public. We will affirm the Board's order.

## BACKGROUND

Sweeten is a licensed Volvo Trucks dealer located in Houston. Pursuant to its franchise agreement, Sweeten is assigned a geographic area of responsibility (AOR). Sweeten's AOR consisted of 24 counties.

In September 2013, Volvo Trucks gave Sweeten notice that it intended to modify Sweeten's AOR by removing eleven counties (which was later amended to ten counties). *See id.* § 2301.454(a)(1), (b). In November 2013, Sweeten filed a protest of the proposed modification with the Texas Department of Motor Vehicles. *See id.* § 2301.454(c). The case was referred to the State Office of Administrative Hearings for assignment of an administrative law judge (ALJ). After a six-day contested hearing, the ALJ closed the evidentiary record in December 2014. The ALJ later issued a proposal for decision (PFD), which included findings of fact and conclusions of law and recommended that Volvo Trucks's proposed modification be granted.

In November 2015, the Board issued a final order adopting the ALJ's findings of fact and conclusions of law and making additional findings and an additional conclusion. Among other things, the Board found that good cause for modification of the franchise agreement had been established based on: (1) "[Sweeten's] sales in relation to the sales in the market"; (2) "[Sweeten's] investment and obligations"; and (3) "the adequacy of [Sweeten's] service facilities, equipment, parts and personnel in relation to those of other dealers of new motor vehicles of the same line-make." *See id.* § 2301.455(a) (listing factors the Board should consider in determining whether good cause has been established). Accordingly, the Board approved Volvo Trucks's proposed modification. Sweeten now seeks review of the Board's order in this Court. *See id.* § 2301.751(b).

2

**STANDARD OF REVIEW**

Because this case was removed from the district court to this Court, we apply the same standard of review that the district court would have applied—a substantial-evidence review. *See id.* § 2301.751(a)(2) ("A party to a proceeding affected by a final order, rule, or decision or other final action of the board with respect to a matter arising under this chapter . . . may seek judicial review of the action under the substantial evidence rule in . . . the court of appeals for the Third Court of Appeals District."); *Buddy Gregg Motor Homes, Inc. v. Motor Vehicle Bd. of Tex. Dep't of Transp.*, 156 S.W.3d 91, 98 (Tex. App.—Austin 2004, pet. denied) (applying substantial-evidence review in case removed from district court); *see also* Tex. Gov't Code § 2001.174 (providing standard of review "[i]f the law authorizes review of a decision in a contested case under the substantial evidence rule"). Under this standard we may not, with respect to questions committed to an agency's discretion, substitute our judgment on the weight of the evidence for that of the agency. Tex. Gov't Code § 2001.174. We must, however, reverse an order if it prejudices substantial rights because its findings, inferences, conclusions, or decisions (1) violate a constitutional or statutory provision; (2) exceed statutory authority; (3) were made through unlawful procedure; (4) were affected by other error of law; (5) are not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (6) are arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion. *Id.* An agency order is presumed to be valid and is supported by substantial evidence if the evidence in its entirety is sufficient to allow reasonable minds to have reached the conclusion the agency must have reached to justify the disputed action. *Texas State Bd. of Dental Exam'rs v. Sizemore*,

759 S.W.2d 114, 116 (Tex. 1988).  The party challenging the order has the burden of demonstrating a lack of substantial evidence.  *Id.*; *CenterPoint Energy Entex v. Railroad Comm'n*, 213 S.W.3d 364, 369 (Tex. App.—Austin 2006, no pet.).

In addition, this case requires us to interpret the Occupations Code.  Our primary objective in construing statutes is to give effect to the Legislature's intent.  *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009).  The plain meaning of the text is the best expression of legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or unless the plain meaning would lead to absurd or nonsensical results that the Legislature could not have intended.  *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008); *see* Tex. Gov't Code § 311.011 ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage.").  The proper construction of a statute is a question of law we review de novo.  *See First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631 (Tex. 2008); *Brown v. Nero*, 477 S.W.3d 448, 450 (Tex. App.—Austin 2015, pet. denied).

**DISCUSSION**

In its first and second issues, Sweeten contends that the Board misinterpreted the Occupations Code and that this misinterpretation caused the Board to prejudice Sweeten's substantial rights.  Sweeten first points out that the Occupations Code provides that the Board "*shall* determine whether the manufacturer, distributor, or representative has established by a preponderance of the evidence that there *is* good cause for the proposed modification or replacement," *see* Tex. Occ. Code § 2301.454(d) (emphasis added), and that, in making its determination, the Board "*shall*

4

consider *all existing circumstances*," *see id.* § 2301.455(a) (emphasis added). Sweeten argues that the emphasized language mandates that the Board "focus on currently existing circumstances." Sweeten further argues that "[a]lthough the Board may consider the circumstances then existing when Volvo Trucks made its decision to reduce Sweeten's AOR, the Legislature requires the Board to focus on the present situation." Sweeten complains that "instead of carefully examining the 2014 data," the most recent data available at the time of the ALJ hearing, the Board "concentrated on" data from the years 2009–2013. Sweeten argues that this past data does not reflect "existing circumstances" but rather "past or historical sales and service performance." Sweeten notes that the Board refused "to look at a very narrow snapshot in time"—the most recent data—looking instead "at the broader time period, particularly the last five years."

Sweeten's interpretation of the statute to require the Board to look only at a "narrow snapshot in time" and ignore or downplay any historical data is belied by the statute's own terms.[1] The Code requires the Board to consider several factors in determining whether good cause exists to modify a franchise, and several of these factors require a compilation and examination of historical data, including:

- the dealer's sales in relation to the sales in the market;

- the dealer's investment and obligations;

[1] In its reply brief, Sweeten states that it "does *not* argue that [the statute] prevents the Board from considering the recent past." However, in its opening brief, Sweeten argued that "the Legislature intends for the Board's focus to be on the currently existing circumstances and to treat those circumstances as predominant, if not controlling" and that "the Legislature requires the Board to focus on the present situation." Sweeten also complained that "the PFD is replete with references to Sweeten's past or historical sales and service performance." In any event, as discussed below, the Board did consider the most recent 2014 data as well as data from the several preceding years.

5

- injury or benefit to the public;

- the adequacy of the dealer's service facilities, equipment, parts, and personnel in relation to those of other dealers of new motor vehicles of the same line-make;

- whether warranties are being honored by the dealer; and

- the parties' compliance with the franchise.

*See id.* § 2301.455(a). For example, "the dealer's sales in relation to sales in the market" will necessarily require a compilation of sales data from the dealership and sales data from the market generally over a period of time, presumably years. Likewise, "the dealer's investment and obligations" will necessarily include all investments a dealer has made in the franchise; to do otherwise would cut against a long-time dealer like Sweeten's ability to demonstrate the full force and effect of his investments in the dealership over time. The weight to be given the historical data—whether the most recent data or data from five years ago—is an issue relative to the weight to be given evidence, a matter solely within the province of the Board. *See* Tex. Gov't Code § 2001.174 (providing that "a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion").

In addition, even if we were to accept Sweeten's statutory construction, Sweeten has not shown that the Board failed to consider the recent data, only that the Board did not view the most recent data as conclusive or give the recent data as much weight as Sweeten may have desired. For example, the Board acknowledged that Sweeten "improved its sales process in the past year" and noted that Sweeten's dealer operating standards and customer service index scores improved during 2014. The Board also acknowledged that "Sweeten has undoubtedly made significant strides in the

6

past year to improve both its sales and service performance." Sweeten has not pointed to a single instance when it offered evidence that the ALJ refused to admit. The mere fact that the Board did not find the evidence of Sweeten's improvement to be dispositive is not reversible error. *See id.*[2]

In its brief, Sweeten states, "The ALJ and the Board treated Sweeten's recent investments in expanding and modifying its facilities and its significant improvements in sales and service performance as 'irrelevant under the statutory analysis' and 'not relevant to the outcome of this case.'" This statement is not borne out by the record before us as viewed under our standard of

---

[2] Having concluded that the Board did not err in considering data from the past several years, including the most recent data available, we also conclude that there is substantial evidence in the record to support the Board's decision. For example, the ALJ made the following findings, which were adopted by the Board and not challenged by Sweeten on appeal:

- Sweeten's earned market share across its AOR for the years 2010–2013 was 3.1%, 1.2%, 5.8%, and 3.5%, while Volvo Trucks's national market share for the same years was 10.92%, 14.08%, 12.37%, and 13.18%. For the same years, Sweeten's earned market share in the counties that Volvo Trucks proposed to remove from Sweeten's AOR was 1.5%, 0.9%, 0.3%, and 1.9%.

- From January 2009 through July 2013, Sweeten made no truck sales at all in eight of the counties Volvo Trucks proposed for removal and made only one sale in an additional county.

- From 2010 through 2013, only 2.2% of Sweeten's service business and only 1.5% of its parts business was derived from the counties proposed for removal.

- Sweeten's DOS scores (which measure "best practices across the dealer network in categories such as customer service, parts, leasing and staffing and operation of the dealership") for 2011–2014 were 57, 73, 58, and 66. Volvo Trucks dealers in large markets generally maintain DOS scores of 90 or higher.

- Sweeten's customer-service scores for 2011–2013 were all below Volvo Trucks's expected standard.

7

review. Although the PFD and final order do contain the quoted language, the context shows that the ALJ and the Board were not refusing to consider Sweeten's recent improvements *for any reason* as Sweeten's brief suggests. As discussed above, the Board explicitly references those improvements. Instead, the context surrounding the quoted language makes it clear that the ALJ and Board were merely rejecting Sweeten's attempt to use data concerning its recent improvements to argue that the proposed modification was an inappropriate "penalty." The Board concluded that "the overall statutory good cause analysis is not predicated on a concept of wrongdoing by the dealer."

We conclude that the Board did not misinterpret or misapply the Occupations Code's command to consider "all existing circumstances." The Board did consider the most recent data but also properly examined data from recent years. Were we to adopt Sweeten's interpretation, a dealership could nearly always avoid a franchise modification by making improvements only after receiving notice of a proposed modification. Such a reading is not mandated by the statute's plain language. Because Sweeten has failed to show that the Board's findings or decision were arbitrary or capricious or otherwise reversibly erroneous, *see id.* § 2001.174(2), we overrule Sweeten's first and second issues.

In its third issue, Sweeten contends that the Board erred in failing to consider the impact of an additional Volvo Trucks dealership, which Sweeten alleged that Volvo Trucks intended to establish after modifying Sweeten's AOR. According to Sweeten, "[t]he reliable and probative evidence in the record as a whole shows that the new Volvo Trucks dealership will take sales and service business from Sweeten in both the removed and retained counties, thus materially diminishing the value of the substantial investment made in the Sweeten dealership." Sweeten also

8

notes that, "[b]ecause the new dealership will be located more than 15 miles from Sweeten and outside of Harris County, Sweeten will be unable to protest its establishment." *See* Tex. Occ. Code § 2301.652(b).

However, the Board considered Sweeten's arguments about the possible dealership but concluded that they were mere speculation:

> Sweeten's primary argument is that its existing investment will be adversely affected in the future by a new dealership being opened in the removed counties. However, there is no evidence of any specific plan by Volvo Trucks to immediately open another dealership in the removed counties. Moreover, that is not a part of this proceeding. This modification does not propose to add a new dealership. It simply proposes to reduce Sweeten's AOR. While this may be a precursor to Volvo Trucks allowing another dealership to open later in the removed counties, that is too speculative to weigh into the analysis in this case. There is no evidence regarding where or when such a dealership might open, or what the market for trucks might be at the specific time that any additional dealership might be opened. The only issue to be considered in this case is the known impact of the proposed modification—*i.e.*, the removal of the 10 counties from Sweeten's AOR.

Although Sweeten argues that "[t]his statement can be supported only if one suspends common sense and ignores the only rational inferences from the evidence," Sweeten has not pointed us to any evidence in the record that Volvo Trucks actually plans to establish a new dealership, nor has Sweeten pointed us to any evidence concerning the details of the hypothetical dealership or empirical data about the impact the dealership would have on Sweeten or the public. In addition, we note that while Sweeten argues in its first two issues that the Board should only consider the "existing circumstances," which Sweeten interprets to mean the most recent data representing a snapshot of the time just *before* the ALJ hearing, its third issue asks this Court to speculate concerning *future* possibilities that do not yet exist. As the ALJ concluded,

> While the Code does require that "all existing circumstances" be considered, the mere potential for a second dealership at some point in the future is not an "existing circumstance." The possibility that Volvo Trucks might franchise a second dealership—while logically likely—is not practically imminent nor specifically planned such that its impact could be properly estimated and determined at this time, nor is it an "existing circumstance."

We conclude that Sweeten has not demonstrated that the Board's decision was arbitrary, capricious, or otherwise reversible. Accordingly, we overrule Sweeten's third issue.

Having rejected each of Sweeten's challenges to the Board's order, we conclude that Sweeten has failed to meet its burden of demonstrating that its rights were prejudiced because of an unlawful or arbitrary action of the Board.

## CONCLUSION

We affirm the Board's order. *See* Tex. Gov't Code § 2001.174(1).

_____

Scott K. Field, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed:   September 13, 2016